UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD E. KAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-10320-NMG |
| | ) | |
| FIRST HARTFORD CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF RICHARD E. KAPLAN'S OPPOSITION TO
## DEFENDANT FIRST HARTFORD CORPORATION'S MOTION TO COMPEL

This case is the second proxy fraud case brought by Richard E. Kaplan, a shareholder of

First Hartford Corporation ("FHC"), for violations by FHC of the federal securities laws.  The

first case, Richard E. Kaplan v. First Hartford Corporation, Civil Action No. 04-10402-NMG

("Kaplan I"), was filed in response to FHC's dissemination of false and misleading proxy

solicitation materials in connection with its 2003 shareholders' meeting held in January, 2004.

The instant case ("Kaplan II") was filed in response to FHC's dissemination of false and

misleading proxy solicitation materials in connection with its 2004 shareholders' meeting held in

February, 2005.[1]

---

[1] Mr. Kaplan also brought suit against FHC in Maine state court, the state of incorporation of FHC, in 2004, seeking
an order from that court requiring FHC to permit him to inspect and copy the list of shareholders to whom FHC had
sent its notice of annual meeting for its 2004 shareholders' meeting.  Following the denial of FHC's Motion to
Dismiss in that case and the court's Order, dated January 12, 2005, that FHC provide its shareholder list to
Mr. Kaplan, the Maine state court further ordered FHC to pay Mr. Kaplan's attorney's fees and costs.  As the court
(Marden, J.) stated: "[FHC's] actions in this case in its repeated efforts to deny the plaintiff reasonable access to the
shareholders list displays a clear lack of good faith in its dealing with its shareholder in violation of its duty to that
shareholder."  FHC has noted in its memorandum filed in this case in support of its Motion to Compel
("Memorandum in Support") at page 3, that Mr. Kaplan recently filed suit against FHC and its President, Neil Ellis,
in federal court in Maine, alleging illegal, oppressive and fraudulent conduct on the part of Mr. Ellis and the
corporation, and seeking various remedies under Maine state law.

## I.    Summary Of The Plaintiff's Opposition To FHC's Motion To Compel.

In both Kaplan I and Kaplan II, the plaintiff's complaints identified the applicable proxy solicitation materials as the subject of the complaint, and set forth in detail the plaintiff's contentions of wrongdoing by FHC and the reasons for the plaintiff's contentions of wrongdoing. *See* the attachments hereto marked Exhibit 1 and Exhibit 2.[2]  In response to FHC's contention interrogatories in Kaplan I, the plaintiff referred FHC to the applicable proxy solicitation materials and the detailed allegations of the complaint filed in Kaplan I -- *and FHC accepted the interrogatory answers as served.*  When Mr. Kaplan filed his complaint in Kaplan II, FHC argued that the two cases should be consolidated because the two complaints were "virtually identical."  FHC then served virtually identical contention interrogatories on the plaintiff in Kaplan II, and Mr. Kaplan answered those interrogatories in virtually the same manner as he had done in Kaplan I.  In both cases, Mr. Kaplan suggests, the interrogatory answers were fully responsive and adequate, referring FHC as they did to the documents (the proxy solicitation materials) and the facts that formed the source of his information for his allegations of wrongdoing on the part of FHC.

## II.    FHC's Contention Interrogatories And Mr. Kaplan's Responses In Kaplan I.

In Kaplan I, FHC propounded six (6) so-called contention interrogatories to the plaintiff, each asking the plaintiff to "state the basis" for an allegation made in the complaint.  In response

---

[2] FHC's counsel did not include copies of the complaints filed in Kaplan I or Kaplan II with the many exhibits attached to its Memorandum in Support.  The reason for FHC's counsel's failure to include copies of the complaints (and a copy of Mr. Kaplan's interrogatory answers in Kaplan I, which are attached hereto and marked Exhibit 3) as exhibits to its motion will become clear as the Court considers the plaintiff's position with respect to FHC's Motion to Compel.

to 4 of those 6 interrogatories, the plaintiff responded "_See_ the allegations of the Complaint

contained in paragraph(s) ___." _See_ the attachment hereto marked Exhibit 3.[3]

In May, 2004, counsel for FHC sent counsel for Mr. Kaplan a letter objecting to

Mr. Kaplan's responses to FHC's written discovery in Kaplan I. For purposes of the instant

Motion to Compel, the relevant FHC objection in May, 2004 was as follows:

> In response to Interrogatory No. 2 (state the basis for your contention that
> the "[p]roxy materials provided to shareholders were materially false and
> misleading in several respects"), Interrogatory No. 4 (state the basis for your
> contention that the "First Hartford Board of Directors does not fulfill the functions
> of an audit committee"), Interrogatory No. 5 (state the basis for your contention
> that the "First Hartford Board of Directors does not even pretend to fulfill the role
> of a compensation committee"), and Interrogatory No. 6 (state the basis for your
> contention that the "Plaintiff has been irreparably harmed"), Mr. Kaplan refers
> First Hartford to the allegations contained in the Complaint [in Kaplan I]. _These_
> _responses do not provide the substantive information requested, i.e., identification_
> _of all documents, communications, acts/omissions, or any other facts that form the_
> _basis of the allegations in question._ (emphasis supplied)

Counsel for Mr. Kaplan responded in writing to this objection as follows:

> With respect to Mr. Kaplan's answers to Interrogatories 2, 4, 5 and 6, the
> answers provided, which refer you to the detailed paragraphs of the Complaint [in
> Kaplan I], are fully responsive and completely adequate. The Complaint sets
> forth in detail and quite extensively the numerous defects in the proxy materials
> that the plaintiff contends are materially false and misleading. The Complaint at
> paragraphs 9, 11-20, and 23-24 quite succinctly states the bases for the plaintiff's
> contentions of First Hartford Corporation's violations of the federal securities
> laws and for the harm to plaintiff and other shareholders as a result of First

---

[3] For example, FHC in Interrogatory No. 4 in Kaplan I asked: "State the basis for your contention in paragraph 15
of the Complaint that the 'First Hartford Board of Directors does not fulfill the functions of an audit committee.'"
The plaintiff responded: "_See_ the allegations of the Complaint contained in paragraph 15." The allegations of the
Kaplan I complaint in paragraph 15 were as follows: "The Proxy Materials, under the heading 'Audit Committee
Report,' state: 'First Hartford does not have an audit committee and accordingly its entire Board of Directors fulfills
the functions of an audit committee.' This is false and misleading. The First Hartford Board of Directors does not
fulfill the functions of an audit committee. The primary function of an audit committee is to assure that the
independent auditors are properly auditing the financial records prepared by management. In the case of First
Hartford, the Board is made up entirely of the management (CEO, treasurer and vice president) who are responsible
for the financial statements that the auditors are supposed to be auditing. As such, they are in no position to oversee
the auditors. In fact, in the case of First Hartford, the functions of an audit committee are not fulfilled at all. A
reasonable stockholder would find such information material in considering whether to elect a board with no outside
directors." _Compare_ the allegations of the Kaplan I complaint in paragraph 15 and FHC Interrogatory No. 4 in
Kaplan I _with_ the allegations in the Kaplan II complaint in paragraph 10 and FHC Interrogatory No. 2, one of the
responses to which FHC complains in this Motion to Compel.

3

Hartford's false and misleading proxy solicitation.  No supplementation of these answers is required, nor will any be forthcoming.

On July 1, 2004, counsel for the parties held a discovery conference by telephone.  Both Mr. Handler and Ms. Hirsch were present on behalf of the defendant FHC.  During the discovery conference, the parties reached agreement with respect to FHC's objection to Mr. Kaplan's responses to the contention interrogatories.  Mr. Kaplan reported this agreement to the Court as follows:  "With respect to the plaintiff Mr. Kaplan's answers to the defendant FHC's First Set of Interrogatories, FHC had asserted that the answers to Interrogatories 2, 4, 5 and 6 were inadequate because the plaintiff referred FHC to the allegations of the Complaint.  The parties agreed that no supplementation was required at this time since the basis for the plaintiff's allegations were set forth in the Complaint."  Plaintiff Richard E. Kaplan's Motion to Compel the Production of Documents by the Defendant First Hartford Corporation, filed in Kaplan I on July 9, 2004, at p. 6.[4]

### III.    FHC's Contention Interrogatories And Mr. Kaplan's Responses In Kaplan II.

In Kaplan II, the plaintiff filed every bit as detailed a complaint as he did in Kaplan I, and in many respects the second complaint contains more detail than the first.  The complaint in Kaplan II identifies the documents and facts which form the source of the plaintiff's information for the facts alleged.  See Exhibit 2 attached hereto at ¶¶ 7-14.  In paragraph 7 of the Kaplan II complaint, the plaintiff expressly states:  "The Proxy Materials are the subject of this Complaint."  The Kaplan II complaint -- like the Kaplan I complaint -- sets forth in detail and quite extensively the defects in the proxy materials that the plaintiff contends are false and misleading.  For example, in paragraph 13 of the Kaplan II complaint, the plaintiff alleges as follows:

---

[4] FHC opposed Mr. Kaplan's Motion to Compel (unsuccessfully), but did not -- and indeed could not -- take issue with this statement of the parties' agreement as a result of the discovery conference.

The Proxy Materials are incomplete and misleading because they fail to disclose sufficient information about self-dealing transactions between Ellis and First Hartford.  The section entitled 'Certain Relationships and Related Transactions' on pages 9-10 of the Proxy Materials and the statement on page 14 that 'Mr. Ellis received no remuneration for giving these guarantees' would lead a reasonable shareholder to believe that Mr. Ellis has gratuitously guaranteed various loans, and that any loans from Ellis or his entities to First Hartford are without interest, or are the same as the terms of a related loan from a bank to Ellis.  This is false and misleading.  For example, as part of a $1,575,000 loan made on or about May 17, 2000, by Ellis's Journal Publishing company to First Hartford's Putnam Parkade subsidiary, the interest payable by the First Hartford subsidiary includes not only interest at prime plus 1% (which would be consistent with the Proxy Material disclosure) but also 95% of the economic interest in the Putnam Parkade property (95% of the cash flow from the property, and 95% of the net proceeds on any sale of the property).  The Proxy Materials are also misleading in omitting to disclose to shareholders that First Hartford does not maintain documentation of the terms of most of the self-dealing transactions between First Hartford and Ellis and his related entities.  Such information would be considered material by a reasonable stockholder in determining whether to re-elect Ellis (and directors dominated by Ellis) or whether to approve a requirement for independent directors on the Board.[5]

In May, 2005, FHC moved to consolidate Kaplan I and Kaplan II.  In support of its motion to consolidate, FHC asserted that "[t]he complaint in Kaplan II is virtually identical to the complaint in Kaplan I; it merely adds a claim regarding the allegedly misleading nature of FHC's statement in the proxy solicitation opposition [sic] Mr. Kaplan's shareholder proposal."  Defendant First Hartford Corporation's Memorandum in Support of its Motion to Consolidate, filed on May 27, 2005, at p. 2.  The two cases were consolidated by the Court in July, 2005, and

---

[5] Mr. Kaplan also contends that it was false and misleading of FHC to tell its shareholders in its proxy materials that its Board of Directors fulfills the functions of an audit committee for all of the reasons set forth in detail in the complaint in Kaplan II in paragraph 10; that it was false and misleading of FHC to tell its shareholders in its proxy materials that its Board of Directors fulfills the role of a compensation committee for all of the reasons set forth in detail in the complaint in Kaplan II in paragraph 11; that it was false and misleading of FHC to tell its shareholders in the proxy solicitation materials that the Board of Directors takes action on matters in the best interest of all shareholders for all of the reasons set forth in the complaint filed in Kaplan II in paragraph 14; and finally, that he has been harmed because FHC solicited proxies through materials containing false and misleading statements or omissions that a reasonable stockholder would consider material in deciding how to vote, all as set forth in detail in the complaint in Kaplan II in paragraphs 17-19.

a Scheduling Order was entered in Kaplan II which, among other matters, set dates for the service of written discovery and responses thereto in that case.

On August 31, 2005, in Kaplan II, FHC served on the plaintiff six (6) so-called contention interrogatories, directed to the allegations of paragraphs 9, 10, 11, 13, 14 and 19 of the complaint filed in Kaplan II. In response to FHC's contention interrogatories served in Kaplan II -- just as it had done in response to FHC's contention interrogatories served in Kaplan I -- the plaintiff referred FHC to the applicable proxy solicitation materials and the related allegations of the complaint as the source of the plaintiff's information.[6]

## IV.    FHC Unreasonably Insists On Supplementation And Files This Motion To Compel.

Despite its prior agreement that no supplementation was required where the basis for the plaintiff's allegations were set forth in his complaint, and its recognition that the complaints in Kaplan I and Kaplan II were virtually identical, counsel for FHC made it clear that in Kaplan II FHC would not honor its prior agreement and would accept nothing short of supplementation of the plaintiff's responses even if it were *obvious* to FHC which documents and facts formed the basis for Mr. Kaplan's allegations in the Kaplan II complaint. *See* Exhibit G attached to FHC's Memorandum in Support. ("It is apparent to us from your letter that you have a very different understanding than we do of a party's obligation to respond to written interrogatories. Even if it

---

[6] For example, FHC in Interrogatory No. 6 in Kaplan II asked: "State the basis for your contention in paragraph 19 of the Amended Complaint that 'Plaintiff has been irreparably harmed.'" The plaintiff responded: "*See* the allegations of the Amended Complaint contained in paragraphs 17-19." The allegations of the Kaplan II complaint in paragraphs 17-19 were as follows: "17. The Defendant First Hartford solicited proxies through materials containing false and misleading statements or omissions that a reasonable stockholder would consider material in deciding how to vote. 18. First Hartford's false, misleading, and deceptive Proxy Materials caused injury to the Plaintiff and wrongfully interfered with his rights as a shareholder to receive complete, truthful, and accurate information in connection with his vote and with his rights as a shareholder to have other shareholders provided with complete, truthful and accurate information in connection with their votes. 19. As a result of First Hartford's wrongful conduct, Plaintiff has been irreparably harmed."

were 'obvious' to [FHC] which documents and communications form the basis of [Mr. Kaplan's]

allegations in the [Kaplan II complaint] . . . Kaplan's duty to respond fully and accurately to

FHC's [interrogatories] remains unchanged."

Mr. Kaplan submits that his responses to FHC's interrogatories were substantially

justified in the circumstances of these cases since his position has been consistent and has relied

on the detailed allegations in the complaints and FHC's prior acceptance of the interrogatory

responses after the discovery conference in Kaplan I.  Nowhere in its motion does FHC identify

what more the plaintiff could or should say that has not already been said in the complaint in

Kaplan II in paragraphs 10, 11, 13, 14 and 17-19.  Nowhere in its motion does FHC specify what

further identification of documents or information it supposedly needs by way of answers to its

interrogatories to "effectively and efficiently litigate" its case.  Nowhere in its motion does FHC

identify any legitimate discovery purpose that would be served by requiring the plaintiff to

answer the subject interrogatories any differently than it has done -- with FHC's approval in the

past -- in this case.

Moreover, the plaintiff submits that his counsel was fully justified in balking at

participating in a second discovery conference on the terms demanded by FHC's counsel.

Contrary to FHC's counsel's statement in its Certificate of Compliance that they "made several

attempts to narrow the areas of dispute," it is abundantly clear from counsel's letters (attached to

the Memorandum in Support as Exhibits C and G) that, for whatever reason, on this occasion

they had no intention whatsoever of accepting Mr. Kaplan's responses -- as they had done in the

very same circumstances in Kaplan I -- or of moving off their slavish adherence to their new-

found interpretation of Mr. Kaplan's "obligations" to respond to so-called contention

interrogatories.  As they said, "Even if it were 'obvious' . . . which documents and

7

communications form the basis of [Mr. Kaplan's] allegations . . . Kaplan's duty to respond fully and accurately to [FHC's contention interrogatories] remains unchanged."  Statements such as that do not portend a good faith effort to narrow areas of dispute, but rather smack of a purpose to harass the other party by forcing his counsel needlessly to engage in busywork that does not serve the legitimate ends of discovery.

For all of the foregoing reasons, the plaintiff respectfully submits that FHC's Motion to Compel should be denied.

Respectfully submitted,

RICHARD E. KAPLAN,
PLAINTIFF,

By his attorneys,

/s/ Larry C. Kenna
Larry C. Kenna (BBO No. 267760)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated:  November 21, 2005

4013999v1

# EXHIBIT 1



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                  |     |
| -------------------------------- | --- |
| RICHARD E. KAPLAN,               | )   |
|                                  | )   |
|                                  | )   |
| Plaintiff,                       | )   |
|                                  | )   |
| v.                               | )   Civil Action No. _____ |
|                                  | )   |
| FIRST HARTFORD CORPORATION,      | )   |
|                                  | )   |
| Defendant.                       | )   |
|                                  | )   |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

### Nature of the Action

This is a shareholder action brought against defendant First Hartford Corporation ("First Hartford" or the "Company"). This action arises out of the Company's proxy solicitation in connection with its "Annual Meeting of Shareholders" held on January 22, 2004.

The proxy solicitation materials disseminated by the Company contained false or misleading statements of material fact and omitted to state other material facts necessary to make the materials not false or misleading. In disseminating the false or misleading proxy solicitation materials, the Company engaged in fraudulent, deceptive and/or manipulative acts or practices in violation of the federal securities laws.

### Parties

1.    The Plaintiff, Richard E. Kaplan, is an individual residing in the Commonwealth of Massachusetts. He is and was at all relevant times a shareholder of First Hartford, owning beneficially more than 19% of the outstanding shares of the Company's common stock. As a

shareholder, Mr. Kaplan had the right to vote his shares at the Company's meetings based on complete, accurate, and truthful information.

    2.    Defendant First Hartford is a Maine corporation with a principal place of business in Manchester, Connecticut. First Hartford is in the business of purchasing, developing, owning, managing, and selling real estate. First Hartford has more than 3,000,000 shares of common stock issued and outstanding.

### Jurisdiction and Venue

    3.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331(a) and 15 U.S.C. § 78aa.

    4.    Venue is proper in this Court pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because the acts or transactions constituting the violations of law giving rise to these claims occurred in this District.

### Facts

    5.    First Hartford's common stock is registered pursuant to Section 12(g) of the Securities Exchange Act of 1934. The shares of First Hartford trade over the "pink sheets," but are very thinly traded. There is no analyst coverage of the Company.

    6.    First Hartford is controlled by Neil H. Ellis ("Ellis"), who owns beneficially 42.9% of its outstanding shares, and serves as President and a director.

    7.    On or about December 29, 2003, First Hartford sent to certain First Hartford shareholders written notice (the "Notice") of a so-called "Annual Meeting of Shareholders" to be held on January 22, 2004 (the "January 2004 Meeting"). Accompanying the Notice were certain proxy solicitation materials (the "Proxy Materials"). The January 2004 Meeting, and the Proxy Materials are the subject of this Complaint.

8.    The Proxy Materials that First Hartford sent to shareholders along with the Notice of the January 2004 Meeting set forth two purposes for the meeting:

(a)    to elect directors; and

(b)    to approve a "2003 Stock Option Plan."

A true, complete, and accurate copy of the Proxy Materials as received by Plaintiff are attached hereto as *Exhibit A.*

9.    On information and belief, notwithstanding the fact that the January 2004 Meeting was to be the first shareholder meeting in almost 18 years, Ellis caused the January 2004 Meeting to be called on short notice, and sent notices to many shareholders to out of date addresses, in order to discourage any meaningful shareholder participation. On information and belief, Ellis did so because in the absence of substantial opposing votes from other shareholders, Ellis's 42.9% vote would be sufficient to achieve his purpose, which was to obtain a shareholder vote in favor of the 2003 Stock Option Plan. With the 2003 Stock Option Plan, the Board of Directors controlled by Ellis would be able to issue shares to themselves and dilute substantially the interests of the other stockholders. In furtherance of this scheme, Ellis endeavored to give the Proxy Materials a false aura of regularity so as not to arouse the suspicions or opposition of the Company's stockholders.

10.    The Proxy Materials provided to shareholders were materially false and misleading in several respects, as detailed below.

11.    The Notice and Proxy Materials misleadingly refer to the January 2004 Meeting as an "annual meeting." However, the January 2004 Meeting was in fact a "special meeting" -- not an "annual meeting" -- for at least 3 reasons: *First*, under the bylaws of the Company, the annual meeting is to be held not in January but on the last Tuesday of September. *Second*, the

January 2004 Meeting was a "special meeting" since <u>it was the first meeting of stockholders since February, 1986</u>. *Third*, the January 2004 Meeting was a special meeting because the true purpose was not to hold an annual election of directors but to approve an extraordinary stock option plan which would give Ellis the ability to dilute substantially the other First Hartford shareholders.

12.    The Proxy Materials do not disclose that First Hartford had, in violation of its bylaws, failed to hold a stockholder meeting for almost 18 years, a fact which a reasonable stockholder would consider material in determining whether (a) to re-elect the directors who had dispensed with stockholder meetings for so long; and (b) to give those very directors authority to grant themselves options for large numbers of shares.

13.    The Proxy Materials fail to disclose the names of shareholders known by the Company to own more than 5% of the common stock. This information is required by the regulations governing the solicitation of proxies, Schedule 14A, Item 6(d), 17 C.F.R. §240.14a-101, and would have been material to a stockholder considering whether a vote against Ellis and the 2003 Stock Option Plan was simply a futile gesture.

14.    The Proxy Materials state: "All of our directors serve for a term of one year or until their successors are elected and qualified." While this may be literally true, it is materially misleading because it omits to state that First Hartford does not hold elections every year, and that the last time the shareholders elected directors those directors continued in office for almost 18 years without new elections. A reasonable investor would find such information material in deciding whether to re-elect to new terms the directors who had disenfranchised the shareholders for so long.

15.    The Proxy Materials, under the heading "Audit Committee Report," state:  "First Hartford does not have an audit committee and accordingly its entire Board of Directors fulfills the functions of an audit committee."  This is false and misleading.  The First Hartford Board of Directors does not fulfill the functions of an audit committee.  The primary function of an audit committee is to assure that the independent auditors are properly auditing the financial records prepared by management.  In the case of First Hartford, the Board is made up entirely of the management (CEO, treasurer and vice president) who are responsible for the financial statements that the auditors are supposed to be auditing.  As such, they are in no position to oversee the auditors.  In fact, in the case of First Hartford, the functions of an audit committee are not fulfilled at all.  A reasonable stockholder would find such information material in considering whether to elect a board with no outside directors.

16.    The Proxy Materials, under the heading "Compensation Committee Report," state:  "First Hartford does not have a compensation committee and accordingly its entire Board of Directors fulfills the role of compensation committee."  This is false and misleading.  The First Hartford Board of Directors does not even pretend to fulfill the role of a compensation committee.  Instead, Ellis sets his own compensation and that of the other executive officers.

17.    The "Five-Year Performance Graph:  1998-2003," included in the Proxy Materials, purports to show that over the past five years First Hartford has been a good investment for stockholders and misleadingly suggests the prices at which a shareholder could have sold his or her First Hartford shares at various times during the period.  This graph is false and misleading, and a reasonable investor would find this information material in deciding whether to elect the directors and to approve the 2003 Stock Option Plan.  In fact, there is almost

no market for First Hartford stock, and it is very unlikely that a shareholder desiring to sell more than a token number of shares would be able to do so at the prices on the graph.

18.     The Proxy Materials are incomplete and misleading because they fail to disclose sufficient information about self-dealing transactions between Ellis and First Hartford.  Although the Proxy Materials do mention that such transactions occurred, the information in the Proxy Materials is limited to the past three years.  Under normal circumstances -- *i.e.*, when directors are elected annually and a proxy statement is furnished to shareholders annually -- information for the preceding three years might be adequate.  However, under these circumstances -- where there have been no elections in almost 18 years -- it is misleading to provide information on self-dealing transactions during the preceding 3 years but to omit information on other self-dealing transactions that have occurred since the last proxy statement was furnished to stockholders.  Moreover, the Proxy Materials do not include sufficient information for a shareholder to judge whether the terms of the transactions were entirely fair to First Hartford and its shareholders.  Such information would be considered material by a reasonable stockholder in determining whether to re-elect Ellis (and directors dominated by Ellis) and to approve a stock option plan which would enable Ellis to issue more shares to himself and his management.

19.     The Proxy Materials, under the heading "Proposal to Adopt the 2003 Stock Option Plan, Eligibility," state:  "The benefits to any individual are not determinable."  This is false and misleading.  Less than three weeks after the January 2004 Meeting, Ellis and his two other officer/directors, Stuart I. Greenwald and David B. Harding, voted to issue 100,000 options -- covering 3% of the Common Stock -- to Greenwald and Harding.  The timing and recipients of these grants indicate that they were planned at the time the Proxy Materials were prepared.  A reasonable stockholder would consider that information material in deciding whether to approve

the 2003 Stock Option Plan. The omission of that material information from the Proxy Materials renders them misleading.

20.      The Proxy Materials, under the heading "Section 16 Beneficial Ownership Reporting Compliance," state: "[A]ll required reports [on Forms 3, 4 and 5] have been filed on a timely basis on behalf of all persons subject to these requirements." This is false, in that neither Greenwald nor Harding had ever filed his Form 3. Accordingly, both of them were more than 5 years delinquent. In determining whether to vote for Greenwald and Harding, or for a stock option plan intended to be used to enrich them, a reasonable shareholder would have considered relevant both the fact that Greenwald and Harding were delinquent in their SEC filings, and their misrepresentation of that fact.

21.      The deceptive and misleading Proxy Materials were mailed to and received by the Plaintiff in the Commonwealth of Massachusetts.

**COUNT I**

(Violation of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e) --
Deceptive And Inadequate Disclosure In Proxy Solicitation)

22.      The Plaintiff realleges and incorporates by reference each and every allegation contained above, as though fully set forth herein.

23.      The Defendant First Hartford solicited proxies through materials containing false or misleading statements or omissions that a reasonable stockholder would consider material in deciding how to vote.

24.      First Hartford's false, misleading, and deceptive Proxy Materials caused injury to the Plaintiff and wrongfully interfered with his rights as a shareholder to receive complete, truthful, and accurate information in connection with his vote and with his rights as a shareholder

to have other shareholders provided with complete, truthful and accurate information in connection with their votes.

25.     As a result of First Hartford's wrongful conduct, Plaintiff has been irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands judgment as follows:

(a) Voiding the shareholder votes taken at the January 2004 Meeting and any actions taken pursuant thereto;

(b) Ordering that a new shareholder meeting be called, with appropriate notice and pursuant to proxy materials which remedy the defects identified herein and which are complete, accurate, truthful and not misleading;

(c) Awarding to the Plaintiff the costs and expenses of this action, including attorneys' fees; and

(d) All such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a trial by jury.

> RICHARD E. KAPLAN,
> Plaintiff.
>
> By his attorneys,
>
> *Larry Kenna*
> *Robert Rothberg am*
> *John R. Baraniak am*
> Larry C. Kenna (BBO No. 267760)
> Robert Rothberg (BBO No. 430980)
> John R. Baraniak, Jr. (BBO No. 552259)
> CHOATE, HALL & STEWART
> Exchange Place
> 53 State Street
> Boston, Massachusetts 02109
> (617) 248-5000

Dated: February **27**, 2004

ATTEST A TRUE COPY

3658605_2.DOC                            8

JOHN JOHNSTON
STATE MARSHAL, HARTFORD COUNTY

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RICHARD E. KAPLAN,<br><br>Plaintiff,<br><br>v.<br><br>FIRST HARTFORD CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 05-10320-NMG<br>)<br>)<br>)<br>)<br>) |

## FIRST AMENDED
## COMPLAINT AND DEMAND FOR JURY TRIAL

### Nature of the Action

This is a shareholder action brought against defendant First Hartford Corporation ("First

Hartford" or the "Company"). This action arises out of the Company's proxy solicitation in

connection with its Annual Meeting of Shareholders called for February 24, 2005. The proxy

solicitation materials disseminated by the Company contained false or misleading statements of

material fact and omitted to state other material facts necessary to make the materials not false or

misleading. In disseminating the false or misleading proxy solicitation materials, the Company

engaged in fraudulent, deceptive and/or manipulative acts or practices in violation of the federal

securities laws.

### Parties

1.     The Plaintiff, Richard E. Kaplan, is an individual residing in the Commonwealth

of Massachusetts. He is and was at all relevant times a shareholder of First Hartford, owning of

record and beneficially more than 100,000 shares of the outstanding shares of the Company's

common stock.  As a shareholder, Mr. Kaplan has the right to vote his shares at the Company's meetings for which shareholders are provided complete, accurate, and truthful information.

2.      Defendant First Hartford is a Maine corporation with a principal place of business in Manchester, Connecticut.  First Hartford is in the business of purchasing, developing, owning, managing, and selling real estate.  First Hartford has more than 3,000,000 shares of common stock issued and outstanding.

### Jurisdiction and Venue

3.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331(a) and 15 U.S.C. § 78aa.

4.      Venue is proper in this Court pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because the acts or transactions constituting the violations of law giving rise to these claims occurred in this District.

### Facts

5.      First Hartford's common stock is registered pursuant to Section 12(g) of the Securities Exchange Act of 1934.  The shares of First Hartford trade over the "pink sheets," but are very thinly traded.  There is no analyst coverage of the Company.

6.      First Hartford is controlled by Neil H. Ellis ("Ellis"), who owns beneficially 42.9% of its outstanding shares, and serves as President and a director.

7.      On or about January 31, 2005, First Hartford sent to certain First Hartford shareholders written notice (the "Notice") of an Annual Meeting of Shareholders to be held on February 24, 2005 (the "February 2005 Meeting").  Accompanying the Notice were certain proxy solicitation materials (the "Proxy Materials").  The Proxy Materials are the subject of this Complaint.

8.      The Proxy Materials that First Hartford sent to shareholders along with the Notice of the February 2005 Meeting set forth two purposes for the meeting:

(a)      to elect directors; and

(b)      to consider and act on a proposal from Plaintiff that would require 80% of the Board of Directors to be independent.

9.      The Proxy Materials provided to shareholders were materially false and misleading in several respects, as detailed below.

10.      The Proxy Materials, under the heading "Audit Committee Report," state: "First Hartford does not have an audit committee and accordingly its entire Board of Directors fulfills the functions of an audit committee." This is false and misleading. The First Hartford Board of Directors may act as the audit committee, but it is false and misleading to tell shareholders that it fulfills the functions of an audit committee. The primary function of an audit committee is to assure that the independent auditors are properly auditing the financial records prepared by management. In the case of First Hartford, the Board is made up entirely of the management (CEO, treasurer and vice president) who are responsible for the financial statements that the auditors are supposed to be auditing. As such, they are in no position to oversee the auditors. In fact, in the case of First Hartford, the functions of an audit committee are not fulfilled at all. A reasonable stockholder would find such information material in considering whether to elect a board with no outside directors, and whether to approve the proposal to require the inclusion of independent directors on the Board.

11.      The Proxy Materials, under the heading "Compensation Committee Report," state: "First Hartford does not have a compensation committee and accordingly its entire Board of Directors fulfills the role of compensation committee." This is false and misleading. The

First Hartford Board of Directors does not even pretend to fulfill the role of a compensation committee. Instead, Ellis alone sets his own compensation and that of the other executive officers.

12.    The "Five-Year Performance Graph:    1998-2003," included in the Proxy Materials, purports to show that over the past five years First Hartford has been a good investment for stockholders and misleadingly suggests the prices at which a shareholder could have sold his or her First Hartford shares at various times during the period. This graph is false and misleading, and a reasonable investor would find this information material in deciding whether to elect the directors and how to vote on the proposal to include independent directors on the Board. In fact, there is almost no market for First Hartford stock, and it is very unlikely that a shareholder desiring to sell more than a token number of shares would be able to do so at the prices on the graph.

13.    The Proxy Materials are incomplete and misleading because they fail to disclose sufficient information about self-dealing transactions between Ellis and First Hartford. The section entitled "Certain Relationships and Related Transactions" on pages 9-10 of the Proxy Materials and the statement on page 14 that "Mr. Ellis received no remuneration for giving these guarantees" would lead a reasonable shareholder to believe that Mr. Ellis has gratuitously guaranteed various loans, and that any loans from Ellis or his entities to First Hartford are without interest, or are the same as the terms of a related loan from a bank to Ellis. This is false and misleading. For example, as part of a $1,575,000 loan made on or about May 17, 2000 by Ellis's Journal Publishing company to First Hartford's Putnam Parkade subsidiary, the interest payable by the First Hartford subsidiary includes not only interest at prime plus 1% (which would be consistent with the Proxy Material disclosure) but also 95% of the economic interest in

the Putnam Parkade property (95% of the cash flow from the property, and 95% of the net proceeds on any sale of the property). The Proxy Materials are also misleading in omitting to disclose to shareholders that First Hartford does not maintain documentation of the terms of most of the self-dealing transactions between First Hartford and Ellis and his related entities. Such information would be considered material by a reasonable stockholder in determining whether to re-elect Ellis (and directors dominated by Ellis) or whether to approve a requirement for independent directors on the Board.

14.     On page 14 of the Proxy Materials, in opposition to the proposal for independent directors on the Board, management states: "The Board of Directors takes action on matters that each director believes to be, in the exercise of his fiduciary responsibilities, in the best interest of First Hartford as a whole, and *all* of its shareholders." This statement is false and misleading. The Board rarely meets, and has a long record of permitting, without meetings, actions to benefit themselves at the expense of First Hartford and its other shareholders.

15.     The deceptive and misleading Proxy Materials were mailed to and received by the Plaintiff in the Commonwealth of Massachusetts.

## COUNT I

(Violation of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e) --
Deceptive And Inadequate Disclosure In Proxy Solicitation)

16.     The Plaintiff realleges and incorporates by reference each and every allegation contained above, as though fully set forth herein.

17.     The Defendant First Hartford solicited proxies through materials containing false or misleading statements or omissions that a reasonable stockholder would consider material in deciding how to vote.

18.     First Hartford's false, misleading, and deceptive Proxy Materials caused injury to the Plaintiff and wrongfully interfered with his rights as a shareholder to receive complete, truthful, and accurate information in connection with his vote and with his rights as a shareholder to have other shareholders provided with complete, truthful and accurate information in connection with their votes.

19.     As a result of First Hartford's wrongful conduct, Plaintiff has been irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands judgment as follows:

(a) Voiding the shareholder votes taken at the February 2005 Meeting and any actions taken pursuant thereto;

(b) Ordering that a new shareholder meeting be called, with appropriate notice and pursuant to proxy materials which remedy the defects identified herein and which are complete, accurate, truthful and not misleading;

(c) Awarding to the Plaintiff the costs and expenses of this action, including attorneys' fees; and

(d) All such other and further relief as the Court deems just and proper.

**JURY DEMAND**

The Plaintiff demands a trial by jury.

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,


  /s/ Larry C. Kenna
Larry C. Kenna (BBO No. 267760)
Robert Rothberg (BBO No. 430980)
CHOATE, HALL & STEWART LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 248-5000

Dated:  February 28, 2005


3830111v1

# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-10402-RCL |
| | ) |
| FIRST HARTFORD CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S ANSWERS TO DEFENDANT FIRST HARTFORD CORPORATION'S FIRST SET OF INTERROGATORIES

Pursuant to Fed.R.Civ.P. Rule 33, plaintiff Richard E. Kaplan hereby answers

Defendant First Hartford Corporation's First Set of Interrogatories, as follows:

GENERAL OBJECTIONS

1.     The plaintiff Richard E. Kaplan objects to each Interrogatory to the extent that it seeks information that is beyond the scope of discovery in this matter, information protected by a claim of privilege, including without limitation, the attorney-client and/or work product privileges, information prepared in anticipation of litigation or trial, or information otherwise immune from discovery.

2.     The plaintiff Richard E. Kaplan objects to each Interrogatory to the extent that it is overbroad, unduly burdensome, or calls for information that is not reasonably calculated to lead to the discovery of admissible evidence.

3.     The plaintiff Richard E. Kaplan objects to each Interrogatory to the extent that it places a greater burden on the plaintiff than that required by law.

4.     The plaintiff Richard E. Kaplan objects to each Interrogatory to the extent that it seeks information that is within the public domain and equally accessible and available to the defendant.

5.     These General Objections are incorporated into the plaintiff's answer to each Interrogatory made herein.

ANSWERS

1.    State the basis for your contention in paragraph 9 of the Complaint that Mr. Ellis "sent notices to many shareholders to out of date addresses, in order to discourage any meaningful shareholder participation."

ANSWER:    I am aware of shareholders who did not receive the proxy materials at their current addresses. I believe that Mr. Greenwald admitted to not having current addresses for some shareholders.

2.    State the basis for your contention in paragraph 10 of the Complaint that the "Proxy Materials provided to shareholders were materially false and misleading in several respects."

ANSWER:    See the allegations of the Complaint contained in paragraphs 9 and 11 through 20.

3.    State the basis for your contention in paragraph 11 of the Complaint that the January 2004 Meeting was First Hartford's "first meeting of the stockholders since February, 1986."

ANSWER:    First Hartford's Form 10-K for Fiscal Year ended April 30, 2003 so states.

4.    State the basis for your contention in paragraph 15 of the Complaint that the "First Hartford Board of Directors does not fulfill the functions of an audit committee."

ANSWER:    See the allegations of the Complaint contained in paragraph 15.

5.    State the basis for your contention in paragraph 16 of the Complaint that the "First Hartford Board of Directors does not even pretend to fulfill the role of a compensation committee."

ANSWER:    See the allegations of the Complaint contained in paragraph 16.

2

6.    State the basis for your contention in paragraph 25 of the Complaint that "Plaintiff has been irreparably harmed."

ANSWER:    See the allegations of the Complaint contained in paragraphs 23 and 24.

7.    State the number of shares of the common stock of First Hartford (the "Shares") that you presently hold, or ever held at any time, and the period during which such shares were held.

ANSWER:    The plaintiff objects to this interrogatory on the grounds that it is overbroad and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, the plaintiff states that he has owned of record and beneficially, with sole voting power over, more than one thousand shares of the common stock of First Hartford at all times during the past ten years.

8.    With regard to the transfer of 111,818 Shares to you by your wife on January 23, 2004 (the "Transfer"):

a.    Explain the reason for the Transfer, including any reason underlying the timing of the Transfer; and

b.    Explain why the Transfer was made without consideration.

ANSWER:    The plaintiff objects to this interrogatory on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence.

9.    Identify any person(s) with whom you share voting power over any of your Shares.

ANSWER:    The plaintiff objects to this interrogatory on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Without waiving these objections, the plaintiff states that he has owned of record and beneficially, with

3

sole voting power over, more than one thousand shares of the common stock of First Hartford at all times during the past ten years.

     10.    For each person identified in response to Interrogatory No. 9, state the number of Shares for which you share voting power with that person.

    ANSWER:    See the response to Interrogatory No. 9.

    Signed under the pains and penalties of perjury this _20th_ day of May, 2004

                                                 _____

                                           Richard E. Kaplan

As to objections:

_____
Larry C. Kenna (BBO No. 267760)
CHOATE, HALL & STEWART
53 State Street
Exchange Place
Boston, MA 02109
(617) 248-5000

Dated:  May 20, 2004