UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST HARTFORD CORPORATION,<br><br>        Defendant. | Civil Action No. 04-10402-NMG |
| RICHARD E. KAPLAN,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST HARTFORD CORPORATION,<br><br>        Defendant. | Civil Action No. 05-10320-NMG |

**PLAINTIFF RICHARD E. KAPLAN'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

The defendant FHC urges this Court to grant it summary judgment because, FHC argues, the plaintiff Kaplan's proxy fraud claims asserted in cases filed in 2004 and February 2005 ("Kaplan I" and "Kaplan II") have been rendered moot. In Kaplan I, the plaintiff has asked that this Court void, on the grounds of false and misleading proxy materials, (i) the first election of directors held by FHC since 1986; and (ii) the approval of FHC's 2003 Stock Option Plan. In Kaplan II, the plaintiff has asked that this Court void, on the grounds of false and misleading proxy materials, (i) the second election of directors held by FHC since 1986; and (ii) the vote on

a shareholder proposal submitted by plaintiff which, if adopted, would require FHC to have independent directors on its board. In each case Kaplan has also asked that FHC be required to hold new votes with new proxy materials that are not false and misleading, and otherwise comply with applicable law.

In its motion for summary judgment, FHC contends that both Kaplan I and Kaplan II have been rendered moot by actions taken by FHC as follows: (i) the distribution of a Proxy Statement in October 2005; and (ii) the holding of an annual meeting of the shareholders of FHC on November 30, 2005, at which the shareholders elected directors and ratified the adoption of the 2003 Stock Option Plan, which had been challenged in Kaplan I. FHC's premise is that the Proxy Statement it mailed in October 2005 and the meeting it held in November 2005 gave Kaplan the relief he had requested in Kaplan I and Kaplan II, and that the shareholder votes in November 2005, which ratified the adoption of the 2003 Stock Option Plan and re-elected the same directors as have been challenged in Kaplan I and Kaplan II, have provided Kaplan with the very relief he seeks, leaving the Court powerless to grant Kaplan any further relief in the proxy fraud cases, and thus rendering the two cases moot.

For purposes of this motion, FHC does not contest, and the Court must assume, that the FHC proxy statements challenged in Kaplan I and Kaplan II were false and misleading, in violation of applicable law. That is, it is FHC's burden to show that even if FHC used false and misleading proxy statements in connection with (i) its first elections of directors since 1986; (ii) the adoption of the 2003 Stock Option Plan; and (iii) the defeat of Kaplan's shareholder proposal, Kaplan's cases are moot and the plaintiff has no remedy in this Court.

FHC's motion for summary judgment should be denied for the following reasons:

1. FHC failed to serve with its motion a concise statement of the material facts of record as to which it contends there is no genuine issue to be tried, as required by L.R. 56.1.

2. Since the Proxy Statement distributed by FHC to shareholders in October 2005 was materially false and misleading and did not remedy all of the inaccuracies in FHC's prior proxy statements, the November 2005 "ratifications" that FHC relies on for its mootness argument are themselves subject to challenge. If any assumption is to be made about that challenge, it must be that the plaintiff will prevail and that the "ratifications" will be voided.

3. FHC has not made any argument, anywhere in its motion, as to why the portion of Kaplan II dealing with the vote on Kaplan's shareholder proposal would be moot under any circumstance.

## II. STATEMENT OF MATERIAL FACTS IN DISPUTE

The plaintiff Kaplan has filed and served with this opposition his L.R. 56.1 Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment. Kaplan contends that:

1. The proxy statements distributed by FHC management in connection with the January 2004 and February 2005 shareholder meetings were materially false and misleading in several respects, as detailed in the complaints filed in Kaplan I and Kaplan II. For purposes of this motion, the Court must accept as true the allegations in Kaplan I and Kaplan II that those proxy statements were false and misleading.

2. The October 2005 Proxy Statement was not a "revised proxy statement," as stated by FHC in support of its motion for summary judgment. That proxy statement was issued in connection with the November 30, 2005 Annual Meeting of Shareholders, did not remedy the

materially false and misleading statements contained in the earlier proxy statements, and was itself materially false and misleading in several respects.

3.  On March 9, 2006, Kaplan filed a third proxy fraud case against FHC, challenging the October 2005 Proxy Statement and seeking to void the votes taken at the November 30, 2005 Meeting ("Kaplan III"). If FHC were to prevail in Kaplan III, that might moot certain issues in Kaplan I. However, if Kaplan were to prevail in Kaplan III and void the ratification of the 2003 Stock Option Plan, it would still be necessary for this Court to resolve Kaplan I relating to the *initial* adoption of the 2003 Stock Option Plan.

4.  Kaplan's February 2005 shareholder proposal for the election of 80% independent directors (hereinafter the "Shareholder Proposal"), though ostensibly defeated by vote of the shareholders, was defeated because of the distribution of materially false and misleading proxy materials by management, was not addressed in the October 2005 Proxy Statement, has not been ratified by a subsequent vote of the shareholders, and continues in effect.

Accordingly, Kaplan asserts, Kaplan I is not moot as to the FHC 2003 Stock Option Plan, and Kaplan II is not moot as to the Shareholder Proposal. Moreover, in light of Kaplan III, which challenges the most recent election of the same three directors elected at the earlier shareholder meetings, Kaplan submits that neither Kaplan I nor Kaplan II is moot as to the election of directors, since if Kaplan prevails on that issue, in the next election of directors the three individuals will have to disclose to shareholders that none of them has been properly elected by shareholders for more than 20 years.

## III. ARGUMENT

A.   Election of Directors.

FHC says that this Court cannot grant Kaplan the relief he seeks in Kaplan I and Kaplan II because the directors elected at those challenged meetings have served their terms and Kaplan has not contested the election of those same directors at the November 2005 meeting. That is not correct. On March 9, 2006, Kaplan filed Kaplan III, a proxy fraud case that asserts the distribution by FHC of materially false and misleading statements in the October 2005 Proxy Statement and that seeks to void the shareholder votes taken at the November 30, 2005 meeting, including, without limitation, the vote electing the three directors that are currently serving their terms.

The cases cited by FHC in support of mootness where a challenge was made to the election of directors whose terms had lapsed are not applicable here because -- unlike the instant case -- in those cases the plaintiff was not challenging the later election of those directors to new terms. See General Electric Co. v. Cathcart, 980 F.2d 927 (3rd Cir. 1992), and Buckley v. Archer-Daniels-Midland Co., 111 F.3d 524 (7th Cir. 1997).

Here, the Court in Kaplan III can grant Kaplan his requested relief by voiding the shareholder vote of November 30, 2005 electing the directors to new terms, and ordering a new shareholder meeting to elect directors. In that case, the results of Kaplan I and Kaplan II will be significant. If plaintiff prevails, then in the new election of directors FHC will need to disclose to its shareholders that none of the management candidates have been properly elected by the shareholders for at least 20 years.

B.   Stock Option Plan.

FHC states -- without support -- that it remedied the alleged inaccuracies in the proxy statements challenged in Kaplan I and Kaplan II, and has held the November 2005 shareholder

5

meeting "at which FHC's shareholders overwhelmingly voted to ratify the Stock Option Plan." However, FHC has not shown and cannot show that there is no genuine issue of material fact as to whether the October 2005 Proxy Statement "remedied" the inaccuracies in the earlier proxy statements respecting the 2003 Stock Option Plan.[1] Moreover, Kaplan has filed Kaplan III which, among other allegations of materially false and misleading statements contained in the October 2005 Proxy Statement, alleges several false and misleading statements concerning the ratification of the 2003 Stock Option Plan. See Exhibit 1 attached hereto, ¶¶ 21-24.

There is an additional reason why Kaplan I is not moot. Although FHC asserts in its supporting memorandum that the Court cannot grant Kaplan the relief he seeks with respect to the 2003 Stock Option Plan, at the time FHC distributed the proxy statement challenged in Kaplan III it acknowledged as follows: "In the absence of a court order, [FHC] cannot unilaterally rescind stock options that it has previously granted . . . ." See Exhibit C to the Declaration of Stuart I. Greenwald, filed in support of FHC's motion for summary judgment, at p.17. That is exactly the relief Kaplan seeks in Kaplan I: voiding shareholder approval of the 2003 Stock Option Plan. Thus, this Court in fact can give the plaintiff effectual relief in Kaplan I, and that case is not moot.

FHC's motion erroneously relies on the case of Cohen v. Ayers, 449 F.Supp. 298 (N.D.Ill. 1978), in which a corporate defendant had used false proxy materials to achieve the adoption of a stock option plan. In Cohen, there was a second shareholder meeting, for which the defendant distributed ratification proxy materials that the plaintiff did not challenge and

---

[1] FHC did not disclose to shareholders in the proxy statement challenged in Kaplan I that management intended to violate both the letter and the spirit of the 2003 Stock Option Plan as approved by the shareholders by awarding stock options of a type not authorized by the Plan and that guaranteed profit to the recipients of the stock options despite management's representations that such profits would not be achieved through discounted or re-priced options. Nor did FHC disclose these facts to shareholders in the October 2005 Proxy Statement -- management simply portrayed its action as an effort "to remove any doubt as to the validity of the approval of the 2003 Stock Plan . . . ." See Exhibit C to the Declaration of Stuart I. Greenwald, filed in support of FHC's motion for summary judgment, at p.14.

6

which the court found to be curative. Id. at 308-309; 316. FHC notes in its memorandum that "[s]ignificantly, Kaplan has neither contested the October [sic] 2005 Meeting at which the directors were most recently elected nor the October 2005 Proxy Statement." Perhaps that would have been significant, but it is not correct. Kaplan did contest the October 2005 proxy statement and the November 2005 meeting. To remove any doubt on that score, Kaplan has now filed a formal action with this Court as to the October 2005 Proxy Statement. Even without that, however, FHC's motion would fail, because unlike Cohen, this Court has not made any findings with respect to the adequacy of the October 2005 Proxy Statement.

C.    The Shareholder Proposal.

One of the agenda items for the February 2005 shareholders' meeting was "[t]o consider and act on a proposal from shareholder Richard E. Kaplan requiring 80% of the Board of Directors to be 'independent,' as defined in the proposal . . . ." See Exhibit B to the Declaration of Stuart I. Greenwald, filed in support of FHC's motion for summary judgment, at p.3 of 18. The Board of Directors recommended that shareholders vote against the Shareholder Proposal, and the proposal was defeated. In Kaplan II, Kaplan challenges that vote and the proxy statement distributed by management in connection with the February 2005 shareholder meeting, alleging materially false and misleading statements in several respects, including with respect to management statements made in opposition to the Shareholder Proposal. See First Amended Complaint and Demand for Jury Trial, filed in February, 2005, at ¶ 14. The vote defeating the Shareholder Proposal was not addressed in the October 2005 Proxy Statement (and, therefore, any materially false and misleading statements in the earlier proxy statement were not "cured"), nor was that vote ratified at the November 30, 2005 meeting. Perhaps for these reasons, FHC does not even discuss the Shareholder Proposal in its argument for mootness. Kaplan II is not

7

moot as to the claims made and the relief sought therein with respect to the Shareholder Proposal.

## IV. CONCLUSION

The claims made and the relief sought in Kaplan I and Kaplan II have not been rendered moot by the actions taken by FHC since the inception of this litigation. It is absurd for FHC to argue to this Court that it "has already done what Kaplan asks this Court to order FHC to do." This Court can still, at the very least, void the 2003 Stock Option Plan (as requested by the plaintiff in Kaplan I) and void the defeat of the Shareholder Proposal (as requested by the plaintiff in Kaplan II), and order new votes on those matters. In addition, the Court can, in each of those cases, award the plaintiff his costs and expenses, including attorneys' fees, and grant the plaintiff such other and further relief as to the Court seems just in the circumstances.

Most importantly, since the plaintiff has challenged the ratification proxy statement distributed in October 2005 and the actions taken at the shareholder meeting following distribution of the ratification proxy statement, this Court would have to find and rule that the ratification proxy statement cured the defects in the prior proxy statements before FHC's subsequent actions could be said to have mooted these controversies. That finding cannot be made on the existing record. And, if the plaintiff were to prevail in Kaplan III -- a determination that perhaps must await a trial on the merits -- the outcome could be the voiding of the election of directors, the voiding of the ratification of the 2003 Stock Option Plan, and the voiding of the ratification of the grant of non-qualified and put options to five individuals, as well as the ordering of a new shareholder meeting to remedy all of the defects in the ratification proxy statement.

Since it is clear that these cases are very much alive, that the plaintiff still has a legally cognizable interest in the outcome of the cases, and the Court can still fashion an effectual remedy for the securities law violations of FHC, these cases are not moot[2] and FHC's motion for summary judgment should be denied.

Respectfully submitted,

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

/s/ Larry C. Kenna
Larry C. Kenna (BBO No. 267760)
Robert Rothberg (BBO No. 430980)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: March 15, 2006

4055324.2

---

[2] *See* Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004), and Gulf of Maine Fisherman's Alliance v. Daley, 292 F.3d 84 (1st Cir. 2002).

# EXHIBIT 1

Case 1:05-cv-10320-NMG   Document 18-2   Filed 03/15/2006   Page 1 of 10

FILED
IN CLERKS OFFICE

2006 MAR -8  A 11: 50

U.S. DISTRICT COURT
DISTRICT OF MASS.

RECEIPT # 70938
AMOUNT $ 250.00
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE 3-8-06

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

RICHARD E. KAPLAN,

    Plaintiff,

v.

FIRST HARTFORD CORPORATION,

    Defendant.

---

Civil Action No.

MAGISTRATE JUDGE Sorokin

**COMPLAINT AND DEMAND FOR JURY TRIAL**

06 - 10424WGY

**Nature of the Action**

This is a shareholder action brought against defendant First Hartford Corporation ("First Hartford" or the "Company"). This action arises out of the Company's proxy solicitation in connection with its Annual Meeting of Shareholders held on November 30, 2005. The proxy statement sent to shareholders by the Company contained false or misleading statements of material fact and omitted to state other material facts necessary to make the proxy statement not false or misleading. In disseminating the false or misleading proxy statement, the Company engaged in fraudulent, deceptive and/or manipulative acts or practices in violation of the federal securities laws.

**Parties**

1.    The Plaintiff, Richard E. Kaplan, is an individual residing in the Commonwealth of Massachusetts. He is and was at all relevant times a shareholder of First Hartford, owning of record and beneficially more than 100,000 shares of the outstanding shares of the Company's common stock. As a shareholder, Mr. Kaplan has the right to vote his shares

at the Company's meetings for which shareholders are provided complete, accurate, and truthful information.

2. Defendant First Hartford is a Maine corporation with a principal place of business in Manchester, Connecticut. First Hartford is in the business of purchasing, developing, owning, managing, and selling real estate. First Hartford has more than 3,000,000 shares of common stock issued and outstanding.

### Jurisdiction and Venue

3. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331(a) and 15 U.S.C. § 78aa.

4. Venue is proper in this Court pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because the acts or transactions constituting the violations of law giving rise to these claims occurred in this District.

### Facts

5. First Hartford's common stock is registered pursuant to Section 12(g) of the Securities Exchange Act of 1934. The shares of First Hartford trade over the "pink sheets," but are very thinly traded. There is no analyst coverage of the Company.

6. First Hartford is controlled by Neil H. Ellis ("Ellis"), who owns beneficially at least 42.9% of its outstanding shares, and serves as President and a director.

7. On or about October 26, 2005, First Hartford sent to certain First Hartford shareholders written notice (the "Notice") of an Annual Meeting of Shareholders to be held in Portland, Maine, on November 30, 2005 (the "November 2005 Meeting"). Accompanying the Notice was a proxy statement (the "Proxy Statement"). The Proxy Statement is the subject of this Complaint.

8. The Proxy Statement that First Hartford sent to shareholders along with the Notice of the November 2005 Meeting set forth four purposes for the meeting:

(a) to elect directors;

(b) to consider and act upon a proposal to ratify First Hartford's 2003 Stock Option Plan;

(c) to consider and act on a proposal to ratify a grant of non-qualified stock options to five individuals; and

(d) to consider and act on a proposal to ratify a grant of put options to five individuals.

9. The Proxy Statement provided to shareholders was materially false and misleading in several respects, as detailed below.

10. The Proxy Statement, under the heading "Nominees for the Board of Directors," purports to describe the outside business interests of Messrs. Ellis, Greenwald and Harding. The descriptions omit to include their current real estate activities on behalf of entities other than FHC. A reasonable shareholder would consider such information important in evaluating whether the directors were operating FHC for the benefit of its shareholders, or as a means to further their personal interests in real estate activities outside of FHC, perhaps at the expense of FHC. A reasonable shareholder would also consider the directors' outside business activities to be relevant in evaluating the appropriateness of the compensation that they receive from FHC.

11. The Proxy Statement, under the heading "Meetings of the Board of Directors," states:

> "The Board of Directors does not believe a standing nominating committee is necessary since the full Board of Directors currently participates in the

consideration of director nominees... The Board of Directors gives consideration to director candidates recommended by shareholders in accordance with the procedures described under 'Proposals of Shareholders' on page 2. The Board of Directors does not have a specific process for identifying and evaluating nominees for director, but when considering nominations for membership on the Board, the Board of Directors seeks to identify persons who have the highest capabilities, judgment and ethical standards and who have an understanding of our business."

This is false and misleading. The Board of Directors has not given regular consideration to any director nominees other than the current members of the Board of Directors.

12. The Proxy Statement, under the heading "Compensation Committee Report," states: "First Hartford does not have a separately designated compensation committee, but its entire Board of Directors fulfills some of the functions of a compensation committee." This is false and misleading. The Board does not perform any of the material functions of a compensation committee. Ellis alone sets his own compensation and that of the other executive officers.

13. The "Five-Year Performance Graph: 2000-2005," included in the Proxy Statement, purports to show that over the past five years First Hartford has been a good investment for stockholders and misleadingly suggests the prices at which a shareholder could have sold his or her First Hartford shares at various times during the period. This graph is false and misleading, and a reasonable investor would find this information material in deciding whether to elect the directors. In fact, there is almost no market for First Hartford stock, and it is very unlikely that a shareholder desiring to sell more than a token number of shares would be able to do so at the prices on the graph.

14. The Summary Compensation Table included in the Proxy Statement is incomplete and misleading in that it does not include the value of all monetary and other benefits provided

by FHC to the nominees directly, or indirectly through their various controlled entities and family members.

15. The Proxy Statement is incomplete and misleading because it fails to disclose all required information about self-dealing transactions between directors and First Hartford, and certain of the information it does disclose is incomplete and misleading.

16. The section entitled "Transactions with Management and Others" on pages 10-11 of the Proxy Statement would lead a reasonable shareholder to believe that Mr. Ellis has gratuitously guaranteed various loans, and that any loans from Ellis or his entities to First Hartford are without interest, or are the same as the terms of a related loan from a bank to Ellis. This is false and misleading. For example, as part of a $1,575,000 loan made on or about May 17, 2000 by Ellis's Journal Publishing Company to First Hartford's Putnam Parkade subsidiary, the interest payable by the First Hartford subsidiary includes not only interest at prime plus 1% (which would be consistent with the Proxy Material disclosure) but also 95% of the economic interest in the Putnam Parkade property (95% of the cash flow from the property, and 95% of the net proceeds on any sale of the property).

17. The section entitled "Transactions with Management and Others" is also misleading in informing shareholders that Ellis and his entities provide loans and credit support to FHC, while omitting to disclose that Ellis and his companies have frequently borrowed from FHC.

18. The Proxy Statement is false and misleading in omitting to disclose all loans made or credit extended by FHC to its directors, and in failing to identify for shareholders the loans made by FHC to its directors in violation of the Sarbanes-Oxley Act of 2002.

19. The section entitled "Certain Business Relationships" on page 11 of the Proxy Statement is incomplete and misleading because it omits to disclose business relationships other than Hartford Lubbock, and with respect to Hartford Lubbock is further misleading because it omits to disclose how Ellis' Journal Publishing Company came to own a 99% limited partnership interest and FHC a 1% general partnership interest in Hartford Lubbock L.P.

20. The Proxy Statement is misleading in omitting to disclose to shareholders that First Hartford does not maintain documentation of the terms of most of the self-dealing transactions between First Hartford and the directors and their related entities.

21. On page 14 of the Proxy Statement, in asking the shareholders to ratify the 2003 Stock Option Plan, management states:

> "Provisions have been included to meet the requirements for deductibility of executive compensation for the purposes of Section 162(m) of the Internal Revenue Code with respect to options and other awards by qualifying grants and payments under the 2003 Plan as performance-based compensation."

This is false and misleading. The options that have been granted under the plan do not meet the requirements for deductibility under Section 162(m) of the Internal Revenue Code.

22. The Proxy Statement on page 14, under "Administration of the Plan," states that "The selection of key employees who may participate in the Plan, and the terms and conditions of each award, will be determined by the Board of Directors." This is false and misleading in omitting to disclose that, in fact, the terms and conditions of each award are determined by Neil Ellis and only rubber-stamped by the Board.

23. The Proxy Statement on page 14, under "Types of Awards that May Be Made under the Plan," states that "Stock options granted under the Plan may be of two types: (i) incentive stock options and (ii) nonqualified stock options." This is misleading because it omits to disclose to shareholders that implementation of the Plan involved the grant of Put Options in

tandem with Nonqualified Stock Options. That is, the implementation of the Plan, as devised by Ellis and rubber stamped by the Board, was quite different from the Plan as described to the Shareholders in the Company's December 2003 proxy statement, and again in this Proxy Statement.

24. The discussions of the Proposal to Ratify A Grant of Non-Qualified Stock Options and the Proposal to Ratify a Grant of Put Options on pages 17-19 are false and misleading. The grants that the shareholders are being asked to ratify are not separate grants of Non-Qualified Stock Options and unrelated Put Options. Rather, in the initial implementation of the Plan each of the named participants received a single grant, purportedly under the Plan, consisting of a Non-Qualified Stock Option and a tandem Put Option. Clearly this was improper, and not what shareholders had authorized. If Shareholders are being asked now to ratify the Board implementation of the Plan, which is at variance with the terms of the Plan, they must be told this. The recharacterization of the Non-Qualified Stock Options and Put Options into separate grants is revisionist history designed to cover-up the fact that in implementing the Plan, the Board paid no attention to its terms. This is a relevant consideration for a shareholder in deciding whether to ratify either the Plan or the Non-Qualified Stock Options and Put Options previously authorized by the Board in disregard of the Plan. Indeed, it is a relevant consideration for a shareholder in deciding whether to re-elect the directors who took such actions.

25. The deceptive and misleading Proxy Statement was mailed to and received by the Plaintiff in the Commonwealth of Massachusetts.

## COUNT I

(Violation of Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) --
Deceptive And Inadequate Disclosure In Proxy Solicitation)

26. The Plaintiff realleges and incorporates by reference each and every allegation contained above, as though fully set forth herein.

27. The Defendant First Hartford solicited proxies through materials containing false or misleading statements or omissions that a reasonable stockholder would consider material in deciding how to vote.

28. First Hartford's false, misleading, and deceptive Proxy Statement caused injury to the Plaintiff and wrongfully interfered with his rights as a shareholder to receive complete, truthful, and accurate information in connection with his vote and with his rights as a shareholder to have other shareholders provided with complete, truthful and accurate information in connection with their votes.

29. As a result of First Hartford's wrongful conduct, Plaintiff has been irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands judgment as follows:

(a) Voiding the shareholder votes taken at the November 2005 Meeting and any actions taken pursuant thereto;

(b) Ordering that a new shareholder meeting be called, with appropriate notice and pursuant to proxy materials which remedy the defects identified herein and which are complete, accurate, truthful and not misleading;

(c) Awarding to the Plaintiff the costs and expenses of this action, including attorneys' fees; and

(d) All such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a trial by jury.

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

*/s/ Larry C. Kenna*

Larry C. Kenna (BBO No. 267760)
Robert Rothberg (BBO No. 430980)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated: March 8, 2006