UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD E. KAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A.   No. 04-10402-NMG |
| | ) | No. 05-10320-NMG |
| FIRST HARTFORD CORPORATION, | ) | No. 06-10424-NMG |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT FIRST HARTFORD CORPORATION'S OPPOSITION TO PLAINTIFF
RICHARD E. KAPLAN'S MOTION FOR CONTINUANCE OF TRIAL DATE**

I.    **INTRODUCTION**

Having assured the Court as recently as April 6, 2006 that he was fully prepared to

mediate this dispute on April 26 and to try this consolidated case as scheduled on May 1,

plaintiff Richard E. Kaplan ("Kaplan") now claims, nine business days before trial, that he

cannot do either.  In support of his baseless request for a postponement of the trial date, Kaplan

offers a series of entirely specious justifications, i.e., the pendency of a related case in Maine,

Kaplan's withdrawal of his jury claim, and Kaplan's inability to mediate and prepare for trial

simultaneously, that fail to withstand even cursory examination.  None of these offered reasons

meets the "good cause" standard required for a continuance either because the reason has been

well known to Kaplan for weeks or months or because it has no logical implication for the start

date of this trial.  Because Kaplan has not demonstrated -- and cannot demonstrate -- that "good

cause" exists to delay the trial, the Court should deny Kaplan's motion (the "Motion").

II.    **ARGUMENT**

    A.    **Kaplan has not met the "good cause" standard for a continuance.**

    A motion for a continuance of a trial is governed by Local Rule 40.3, which states that such a motion "will be granted only for good cause."  D. Mass. R. 40.3.  None of Kaplan's proffered reasons comes close to meeting the "good cause" standard for postponing the May 1, 2006 trial date.  See, e.g., Hale v. Ins. Servs. Office, Inc., 109 F.R.D. 434 (D. Me. 1986) (denying motion for continuance of trial where, despite having known for two months of the scheduled trial date, the movant did not demonstrate "diligence in bringing the need for a continuance to the attention of the Court"); Gesteneter Corp. v. Case Equip. Co., 108 F.R.D. 138, 142 (D. Me. 1985) (denying motion for continuance of trial where movant failed to make showing that any "mistake, excusable neglect or any other factor" justified a continuance of trial).

              1.    **The status of the Maine case is irrelevant and has been known to Kaplan for months.**

    The existence of a related case in the District of Maine, Kaplan v. First Hartford Corp., C.A. No. 05-144-B-H, has been well-known to all parties and counsel since Kaplan filed that case in September 2005, seven months ago.[1]  Presumably, at the time of the final pretrial conference in this matter on April 6, 2006, Kaplan's counsel knew of the posture of the Maine case, yet he did not mention it, let alone suggest it had any implication for the trial of this one. Almost six months ago, on October 27, 2005, the Maine Court issued a scheduling order, which

---

[1] Kaplan's Massachusetts counsel have been heavily involved in the Maine case and are admitted *pro hac vice* as counsel for Kaplan there.

directed the parties to be "ready for trial" on July 11, 2006.[2]  (See Scheduling Order dated

October 27, 2005 (copy attached as Exhibit "1").)  Not until now, however, has Kaplan raised

this July 11 date as an impediment.[3]  Moreover, there have been no developments in the Maine

case since April 6 -- and Kaplan does not claim otherwise -- that would suddenly require that this

case not go forward on May 1 as scheduled.

### 2.      The waiver of a jury is not grounds for a postponement.

Kaplan's waiver of his jury claim has no implication for the May 1 trial date.  Contrary to

Kaplan's statement that the Court established the May 1 date only in the event of a jury trial,[4] the

Court made clear at the final pretrial conference that "whether it's a jury trial or a jury-waived

trial, we're going to go forward on May 1st."  (Transcript of April 6, 2006 hearing ("Tr.") (copy

attached as Exhibit "2") at 16: 6-7 (emphasis added).)  Thus, the waiver should have no effect on

the start date for the trial.  While the Court indicated that there would be more flexibility

regarding the schedule for a jury-waived trial, it made clear that any modification to the schedule

that might result from Kaplan's waiver of his jury claim would be a matter of days, not months.

(See Tr. at 19: 6-8 ("If it turns out to be a jury-waived trial, then we have more flexibility in

terms of timing and whether we can put it into the following week even.").)  Accordingly,

---

[2] Kaplan also overstates the import of this date.  While the parties must be "ready for trial" in Maine on July 11, 2006, the trial may not actually commence until sometime thereafter, e.g., if there is more than one case "ready for trial" on that date.

[3] Leaving aside that Kaplan waited until the 11th hour to raise this objection, his assertion that the trial of that action will render this one "moot" is entirely speculative.  Kaplan also ignores that he is the plaintiff in both actions.  Had he truly believed that one case might render the other moot, at some point well before now he could have sought to consolidate the actions in one forum or to stay one action pending the resolution of the other.

[4] "[T]he Court ordered the parties to trial -- if the trial was to be a jury trial -- on May 1, 2006 . . . ."  (Kaplan Motion at 2.)

Kaplan's withdrawal of his jury claim cannot possibly justify the significant postponement of the trial date Kaplan seeks.

### 3.      Kaplan's 11th hour cancellation of the mediation does not justify a continuance of the trial.

Despite agreeing several weeks ago to an April 26 mediation date knowing full well that this case was scheduled for trial on May 1, Kaplan now suddenly -- and without explanation -- finds himself "<u>forced</u> to withdraw" from the mediation because he is unable to mediate and prepare for trial simultaneously.  (Kaplan Motion at 3 (emphasis added).)  Indeed, less than two weeks ago Kaplan's counsel represented to the Court that the parties had agreed to mediate on April 26; there was no suggestion that Kaplan was unable to prepare for mediation and trial at the same time.  Kaplan's 11th hour reversal of his position on mediation is even more inexplicable considering that when the parties agreed in late March to conduct a mediation, it was <u>Kaplan</u> who insisted that he would only mediate on the condition that "<u>[n]o mediation proceedings would in any way delay the pending litigation matters.</u>"  (<u>See</u> E-mail exchange between R. Rothberg and J. Nolan dated March 28, 2006 (copy attached as Exhibit "3") (emphasis added).)  Kaplan conspicuously fails to mention this in his motion.

Kaplan also fails to disclose that the day after the final pretrial conference, at which the Court made plain its intention to try this case as scheduled on May 1, Kaplan's counsel insisted that FHC's counsel agree to a several month postponement of the trial date; otherwise, according to his counsel, Kaplan would refuse to participate in the mediation.  (<u>See</u> Declaration of John B. Nolan ("Nolan Decl.") (attached hereto) at ¶ 4.)  In fact this appears to be exactly what

happened:  Kaplan unilaterally canceled the mediation.[5]  (See E-mail from J. Carr (JAMS) to counsel dated April 12, 2006 (copy attached as Exhibit "4") ("I have taken the April 26, 2006 mediation session off Jim McGuire's calendar as per the instruction of the plaintiff.  Attorney Kenna represented that he would contact opposing counsel regarding this matter.").)[6]

More fundamentally, Kaplan's reliance on the status of mediation to justify a postponement is nonsensical.  He agreed to the schedule for mediation knowing the trial schedule.  Despite his representation to the Court to that effect, he unilaterally canceled the mediation without explanation.  Now he claims to be "willing to mediate" (Kaplan Motion at 1) but finds that he cannot do so because of the trial schedule of which he has been aware for many months.  He apparently now expects the Court to postpone the trial so he can once again pursue the mediation that he himself canceled.  It is axiomatic, however, that a litigant, especially a plaintiff who has four cases pending against the same defendant, should not be permitted to manipulate the Court's longstanding schedule for his own purposes.  See O'Connell v. Hyatt Hotels, 357 F.3d 152, 157 (1st Cir. 2004) ("[L]itigants cannot be permitted to treat a scheduling order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without

---

[5]  In keeping with this practice of acting unilaterally, Kaplan's Motion -- not for the first time in this case -- fails to include the certification required by Local Rule 7.1(A)(2) to confirm that counsel for the movant has conferred in good faith with the non-movant's counsel to attempt to resolve or narrow the issues.

[6] Despite this apparent representation to Mr. Carr of JAMS, Kaplan's counsel did not contact FHC's counsel about his cancellation of the mediation other than to state, in response to an email from FHC's counsel, that "[r]egrettably, Mr. Kaplan is not going to participate in a mediation on April 26."  (See E-mail from L. Kenna to FHC's counsel dated April 12, 2006) (copy attached as Exhibit "4").)  Kaplan has never provided any substantive explanation for why he canceled the mediation.

peril.")  Kaplan's Motion is part of a larger pattern of delay and unwillingness to comply with the Court's schedule that should not be rewarded.[7]

### 4.    Kaplan's willful misreading of the Court's order does not create a discovery dispute justifying a continuance.

Kaplan's suggestion that a trial postponement is necessary because of potential discovery disputes is similarly without merit.  On April 12, 2006, Kaplan noticed three depositions of FHC witnesses for April 25 and 26.  In his cover letter, Kaplan's counsel stated that "in light of my vacation schedule" as well as the schedule for discovery and trial, "the dates of these depositions cannot be negotiated."  (See Letter from L. Kenna to J. Handler dated April 12, 2006 (copy attached as Exhibit "5").  FHC's counsel immediately responded by noting that the Court's instructions were very clear:  Kaplan is to complete his discovery by April 21 and thus his deposition notices were not timely.  FHC therefore asked Kaplan if he would re-notice them for dates consistent with the schedule set by the Court.  Kaplan's counsel responded that he would not and that the Court had imposed no such deadline.  (See E-mail from L. Kenna to J. Handler dated April 12, 2006 (copy attached as Exhibit "6") ("I have noticed the depositions consistent with my recollection of the discussion on April 6, and expect you to produce your witnesses for deposition on April 25 and 26, as noticed.").)

After receiving the hearing transcript, FHC wrote to Kaplan to point out once again what the Court had instructed: "the plaintiff [is] to have limited discovery that will be completed not later than two weeks from today.  That would be the 20th -- let's make it the 21st, that Friday of that week, the 21st of April."  (Tr. at 17:14-17; see Letter from J. Handler to L. Kenna dated April 14, 2006 (copy attached as Exhibit "7").)  In response, Kaplan disputed the plain language

---

[7] As the Court is aware, Kaplan was not able to confer with FHC in a timely manner regarding a joint pretrial memorandum, thereby forcing FHC to file its own pretrial memorandum in order to comply with the Court's schedule.

of the transcript and once again refused to modify the deposition dates.  (See E-mail from L. Kenna to J. Handler dated April 14, 2006 (copy attached as Exhibit "8") ("First, the deposition notices fully comply with what Judge Gorton discussed as a schedule for discovery, and, absent a protective order, the plaintiff expects you to produce the witnesses as noticed for April 25 and April 26.").)[8]  Given that Kaplan delayed for six days after the final pretrial conference to issue his deposition notices and a full week to serve a Rule 34 request, it is disingenuous for him now to argue that the tightness of the discovery deadline requires a postponement of the trial.  It is also apparent that Kaplan is attempting to create a discovery dispute where one does not exist so that he can then bootstrap that "dispute" into a justification for a continuance.  (See Letter from J. Handler to L. Kenna dated April 18, 2006 (copy attached as Exhibit "9").)  The Court should not be persuaded by Kaplan's contrived attempt to delay the trial.

## 5.    Continuance of the trial would prejudice FHC.

Although Kaplan does not address the issue of prejudice in the Motion, a continuance at this late date would cause obvious prejudice to FHC, which has planned for the last ten months to try this case on May 1.  Witnesses have arranged their schedules well in advance to accommodate this trial date, and an 11th hour postponement inconveniences them, prejudices FHC's rights to have these claims resolved, and needlessly squanders time the Court has set aside to try this case.

---

[8] FHC also requested that Kaplan modify his discovery requests to comply with that portion of the Court's order that his additional discovery be restricted to topics concerning the November 2005 shareholder meeting at issue in Kaplan III.  (See, e.g., Tr. at 16: 3-5 (Kaplan entitled only to "such additional documents that relate solely to the third meeting that is in dispute").)  Many if not most of the topics listed in Kaplan's Rule 30(b)(6) notice and his Rule 34 request go well beyond the issues raised in Kaplan III.  (See Kaplan's 30(b)(6) notice and Rule 34 request (copies attached as Exhibits "10" and "11" respectively).)

III.    **CONCLUSION**

Kaplan offers a series of baseless, illogical reasons to justify a continuance of the trial.

The Court should see this attempt to manipulate the schedule for what it is and deny the Motion.

Respectfully submitted,

FIRST HARTFORD CORPORATION

By its attorneys,

_/s/ Jonathan I. Handler_
Jonathan I. Handler, BBO #561475
Jillian B. Hirsch, BBO #659531
DAY, BERRY & HOWARD LLP
One International Place
Boston, MA 02110
(617) 345-4600

-and-

John B. Nolan (admitted *pro hac vice*)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, CT 06103
(860) 275-0100

Dated:  April 19, 2006

**CERTIFICATE OF SERVICE**

I, Jillian B. Hirsch, do hereby certify that on this 19th day of April, 2006, I served a true and correct copy of the foregoing **Defendant First Hartford Corporation's Opposition to Plaintiff Richard E. Kaplan's Motion for Continuance of Trial Date** via e-mail and first class mail on Larry C. Kenna, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110.

/s/ Jillian B. Hirsch
Jillian B. Hirsch

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| **RICHARD E. KAPLAN**<br>        **Plaintiff(s)** | ) <br> ) <br> ) |
| **v.** | )    **CIVIL NO.  05-144-B-H** |
| | ) |
| **FIRST HARTFORD CORPORATION &**<br>**NEIL ELLIS**<br>        **Defendant(s)** | ) <br> ) <br> ) |

## SCHEDULING ORDER with incorporated Rule 26(f) Order

In accordance with Fed.R.Civ.P. 16(b) and the Cost and Delay Reduction Plan for the District of Maine, the Court proposes this document as the Scheduling Order in this case and hereby forwards it to counsel or unrepresented parties for consultation.  Unless an objection to this Order and a proposed discovery plan that shall contain a detailed explanation of the reasons for each requested alteration is filed by **November 17, 2005**, the Court will conclude that the Fed.R.Civ.P. 26(f) meeting has taken place and that the terms and deadlines established in this proposed scheduling order have been agreed to and it shall constitute the report of counsel required by Fed.R.Civ.P.26(f) and it will thereupon become the Court's Scheduling Order under Fed.R.Civ.P.16(b).

Track Assignment:   This case has been assigned to the Standard Track.  Discovery is limited to not more than 30 interrogatories per opposing side (subparts not permitted); 30 requests for admission per opposing side; 2 sets of requests for production per opposing side; and 5 depositions per side.

Subject Matter Jurisdiction:  **Diversity**

Jury Trial:  **None Demanded**

Deadline for Conference of Parties Pursuant to Fed.R.Civ.P.26(f):  **November 13, 2005**

Deadline for Initial Disclosure Pursuant to Fed.R.Civ.P.26(a)(1):  **November 24, 2005**

Deadline for Amendment of the Pleadings and Joinder of Parties:  **January 12, 2006**

Plaintiff(s) shall designate experts required to be disclosed by Fed.R.Civ.P. 26(a)(2)(A) (including treating physicians and other non-retained or specially employed experts) and, with respect to each of them, provide a complete statement of all opinions to be expressed and the basis and reasons therefore by: **January 12, 2006**

Defendant(s) shall designate experts required to be disclosed by Fed.R.Civ.P. 26(a)(2)(A) (including treating physicians and other non-retained or specially employed experts) and, with respect to each of them, provide a complete statement of all opinions to be expressed and the basis and reasons therefore by: **February 16, 2006**

If the expert is retained or specially employed to provide expert testimony in the case or the expert's duties as an employee of a party regularly involve giving expert testimony, the disclosure shall also include the other categories of information specified in Fed.R.Civ.P. 26(a)(2)(B). All required information may, but need not, be provided in the form of a written report prepared and signed by the expert.

Deadline to Complete Discovery: **March 30, 2006**

Deadline to Identify and Produce Local Rule 44 Records: **March 30, 2006**

Counsel are advised that absent some excusable circumstance, discovery initiatives must be undertaken so that the response of the opposing party is filed prior to the discovery deadline.

Deadline for Filing of All Dispositive Motions and All *Daubert* and *Kumho* Motions[1]

Challenging Expert Witnesses with Supporting Memoranda: **April 6, 2006**

Expected Trial Date: This case shall be ready for trial by **July 11, 2006**

Further Matters in Aid of Disposition: The plaintiff(s) shall make a written settlement demand upon the defendant(s) by **March 2, 2006**. The defendant(s) shall respond in writing by **March 16, 2006**.                    So ORDERED.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated this 27th day of October, 2005.

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Such motions shall include any challenges to lack of qualifications, scope of testimony and any other issues addressed by these decisions.

2

# EXHIBIT 2

Page 1

```
 1                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3

 4    RICHARD E. KAPLAN,                )
                        Plaintiff,      )
 5                                      )
                                        ) CA No. 04-10402
 6    vs.                               )          05-10320
                                        )
 7                                      )
      FIRST HARTFORD CORPORATION,       )
 8                      Defendant.      )
 9

10    BEFORE:  THE HONORABLE NATHANIEL M. GORTON

11

12                      PRETRIAL CONFERENCE

13

14

15         John Joseph Moakley United States Courthouse
                       Courtroom No. 4
16                   One Courthouse Way
                      Boston, MA 02210
17             Thursday, April 6, 2006
                       3:17 P.M.
18

19

20

                Cheryl Dahlstrom, RPR, RMR
21                 Official Court Reporter
          John Joseph Moakley United States Courthouse
22             One Courthouse Way, Room 3209
                      Boston, MA 02210
23        Mechanical Steno - Transcript by Computer
24

25
```

Page 2

```
 1    APPEARANCES:
 2        CHOATE, HALL & STEWART
          By:  Larry C. Kenna, Esq.
 3        Two International Place
          Boston, Massachusetts 02110
 4        On behalf of the Plaintiff.
 5        DAY, BERRY & HOWARD, LLP
          By:  Jonathan I. Handler, Esq.
 6        One International Place
          Boston, Massachusetts 02110
 7        - and -
          DAY, BERRY & HOWARD
 8        By:  John B. Nolan, Esq.
          City Place I
 9        Hartford, Connecticut 06103-3499
          On behalf of the Defendant.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

1                      P R O C E E D I N G S

2            THE CLERK:  This is Civil Action 04-10402 and

3    05-10320, Richard Kaplan vs. First Hartford.  Counsel please

4    identify themselves for the record.

5            MR. KENNA:  Your Honor, my name is Larry Kenna,

6    K-E-N-N-A.  I represent the plaintiff, Mr. Kaplan.

7            THE COURT:  Good afternoon, Mr. Kenna.

8            MR. HANDLER:  Good afternoon, your Honor.  Jonathan

9    Handler for the defendant, First Hartford Corporation.  With me

10   is my partner, John Nolan.

11           THE COURT:  Good afternoon to both of you, Mr. Handler

12   and Mr. Nolan.  Please be seated, counsel.

13           We are here on a final pretrial conference in this

14   matter.  And as counsel are aware, I entered a memorandum and

15   order yesterday, that you might not have gotten until today, in

16   which I dealt with the defendant's motion for leave to file a

17   reply brief, which was allowed, and its motion for summary

18   judgment, which was denied.

19           Have counsel had a chance to read that memorandum and

20   order?

21           MR. KENNA:  Yes, your Honor.

22           MR. HANDLER:  We have, your Honor.

23           THE COURT:  So we're all on the same page, then.

24           We are due to go to trial on May 1st, and the only

25   obstacle is this motion to consolidate the third case, which

Page 4

1    we're describing as Kaplan III, with Kaplan's I and II, which,

2    of course, were consolidated last year.

3            Is there any reason, Mr. Kenna, why the consolidation

4    of the third case should warrant a postponement of this trial?

5            MR. KENNA:  I'm not sure I really know the full

6    answer -- the full answer to that.  I've been trying to figure

7    out -- we obviously have the third case.

8            THE COURT:  And the third case involves issues that

9    are predominant in the first two cases, does it not?

10           MR. KENNA:  There are some very similar, if not

11   identical, issues in all three cases, your Honor.  There's no

12   question about that.  The complication of the third case, of

13   course, is that the third meeting purported to ratify some of

14   the prior actions that we're challenging that were taken in the

15   -- principally in the first meeting that's involved here,

16   Kaplan I case, because in that case one of the items on the

17   agenda was the adoption of a stock option plan.  And we've

18   challenged that based on what we say were false and misleading

19   proxy statements with reference to that.

20           THE COURT:  That was Kaplan I?

21           MR. KENNA:  That was Kaplan I.  There are some other

22   issues in Kaplan II that I think the Court has recognized are

23   still alive and should still be alive but that don't bear on

24   the stock option plan.  They have no bearing on that.

25           But Kaplan III purported to ratify the adoption of the

Page 5

1    stock option plan and, in specific, to ratify two elements, if

2    you will, of the stock option plan, two of the types of stocks

3    that were issued.

4           THE COURT:  If you prove the claims that you've

5    brought forth in Kaplan I, would it not a fortiori have an

6    impact on Kaplan III?  And shouldn't they be consolidated?  And

7    shouldn't we go forward on May 1st on all of them?

8           MR. KENNA:  If we're going to go forward on all of

9    them, then I don't think we ought to go forward on May 1st.

10   The problem with Kaplan -- I haven't quite figured this all out

11   myself, your Honor.  The way I see Kaplan I, if we were to

12   prevail and the Court -- the termination was and the judgment

13   was entered that there were deceptive, false, incomplete

14   materials that allowed the adoption of the plan, I think the

15   other side is going to argue, as they did in their summary

16   judgment motion, that they ratified that plan.  So you,

17   therefore, have to attack the ratification of the plan and the

18   materials that were disseminated two years later.

19          THE COURT:  Why can't you do that with the same

20   information that you have now, the same witnesses that you have

21   now, and everything that you have now?

22          MR. KENNA:  Well, there would have -- there's

23   additional elements to the 2006 case.  It's not just that.

24   There are additional elements to the new case that was filed.

25          THE COURT:  Such as?

Page 6

1          MR. KENNA:  We know more now, your Honor.  I mean,

2   when we started Kaplan I, there hadn't been a meeting of the

3   board -- annual meeting of the shareholders of this corporation

4   for 18 years.  We had virtually no information as to what had

5   gone on with this company for a long period of time.

6          Because of some of the discovery that we've been able

7   to conduct in Kaplan I and in Kaplan II, we have found out some

8   other things, especially related to what we call self-dealing

9   transactions, transactions between members of the board of

10  directors, officers of the corporation, and the corporation

11  itself.

12         So we've incorporated some of that information into

13  our allegations in Kaplan III because the proxy materials that

14  are -- the proxy statements that are still being sent to

15  shareholders still don't go into that information.  What they

16  say about it is still incomplete.  It's still misleading.  And

17  there are additional elements of the case that we now know

18  about.

19         THE COURT:  It seems to me whoever you were going to

20  offer to the Court as a witness to testify to that can testify

21  to the failings of the most recent proxy statement as easily as

22  he or she can testify to the failings of I and II.

23         MR. KENNA:  That may be.  That may be.  But there may

24  be additional -- there may be additional persons who need to

25  testify.  I'm not saying that there are going to be.  What I

Page 7

1    think we would need, if we're going to put the three of them

2    together -- and I think we should put the three of them

3    together -- is to take a couple of months for completion of

4    discovery and get this trial on for something like September

5    perhaps, certainly get it on before the next meeting takes

6    place, which I don't think is going to take place until

7    November or December of this year, and give us a chance to get

8    Kaplan III worked up and ready to go.  I don't think it would

9    take much longer than that, a couple of months maybe for

10   discovery.

11            THE COURT:  Let me hear from Mr. Handler.

12            MR. HANDLER:  Your Honor, a couple things.  First, we

13   don't think there's any reason to delay the May 1st date.

14   Second of all, if your Honor is inclined to put all three cases

15   together, we don't see any reason why the three cases can't be

16   put together and we can try them all on May 1st.

17            As I think the discovery has demonstrated to date in

18   Kaplan I and Kaplan II, we're talking about essentially the

19   very same, very small universe of witnesses.  We're talking

20   about the very same documents, the very same issues over and

21   over again.

22            THE COURT:  Is the proxy statement for the November

23   2005 meeting virtually identical to the proxy statements in the

24   earlier ones?

25            MR. HANDLER:  It is, your Honor.  The overlap, as I

Page 8

1    think Kaplan's papers both on the motion to consolidate and

2    otherwise, have indicated the overlap is quite significant.  As

3    your Honor pointed out, the very same witnesses, either that

4    they would call in their case in chief or that we would call,

5    are all going to testify about these very same issues.  The

6    likelihood that there's somehow a new witness that Mr. Kenna

7    and his colleagues haven't yet been able to identify who might

8    testify about the November 2005 proxy statement or that meeting

9    really seems quite unlikely.  Everything that's happened --

10            THE COURT:  Refresh my memory as to the deadlines that

11   I gave in the scheduling order that we entered before, after

12   the consolidation order, or in connection with the

13   consolidation last year.  What were the deadlines?

14            MR. KENNA:  They were much more generous than --

15            THE COURT:  I'm asking this counsel.

16            MR. KENNA:  I'm sorry, your Honor.

17            MR. HANDLER:  In terms --

18            THE COURT:  You may be seated.

19            MR. HANDLER:  In terms of the intermediate deadlines

20   for discovery and that sort of thing?

21            THE COURT:  Yes.

22            MR. HANDLER:  We consolidated, if I'm not mistaken, in

23   July.

24            THE COURT:  Yes.

25            MR. HANDLER:  If memory serves me -- although at that

Page 9

1    point we really already completed discovery in Kaplan I.  Once

2    they were consolidated, I think your order, your Honor, was

3    discovery was essentially open again for all purposes.  And I

4    think we had a relatively short deadline there for document

5    discovery.  I think document discovery was due, if I'm not

6    mistaken, either the end of August or the end of September.

7    Fact discovery was to take place, I think, within a couple of

8    months thereafter.  The parties moved, I believe, for a short

9    extension thereafter, but the summary judgment deadline

10   remained unchanged.  I think that was in February of this year.

11   And I think this is the first scheduled final pretrial

12   conference that we've had.

13          THE COURT:  All right.  Mr. Kenna, what is your

14   recollection?

15          MR. KENNA:  Well, my recollection is that we were only

16   a couple of weeks away from the final pretrial conference in

17   Kaplan I when First Hartford Corporation, the defendants in

18   this case, moved to consolidate the two cases.  It had been on

19   file and had been pending for something like five months.  Then

20   they moved to consolidate.  The Court allowed it.  I think it

21   was the right thing to do.  The Court allowed all this time,

22   between when we consolidated those cases in July of 2005, to

23   work the second case up and to bring it to trial in April --

24   strike that -- May of 2006.

25          I don't think we need to do that.  I'm not suggesting

Page 10

1    that at all.  I think we do need to have a month or a couple of

2    months to make sure that we've gotten the documentation that we

3    are entitled to get from the defendants, which has been most of

4    what this case has been about, trying to get --

5         THE COURT:  Have you requested supplemental answers to

6    your written discovery relating to the third meeting, that is,

7    the one in November of 2005?

8         MR. KENNA:  We just filed the case, your Honor.  We

9    filed the case and just got the answer within the last week or

10   within the last two weeks anyway.

11        THE COURT:  Surely, you anticipated that there was

12   going to be another meeting between the time we met last July

13   and the trial date that had been set in May, did you not?  Why

14   did you anticipate that that was not going to perpetuate the

15   problem?

16        MR. KENNA:  Your Honor, we have no information other

17   than what we've been able to get in discovery, in litigation.

18   If the Court will remember, one of the very first issues in

19   this case, going back to Kaplan I, was whether we could even,

20   as a shareholder, 20 percent almost, 19 percent shareholder, in

21   this corporation, could we take a look at the shareholder list

22   that was used by the company when it sent out its proxy

23   statement for the first meeting?  We spent months, could not

24   get it from the other side.  Took an order of yours, Judge, to

25   get ahold of the shareholder list to take a look at it.  That's

Page 11

1  why things have taken time here, and that's why we're where we

2  are.

3          Now, we didn't know, if they had a meeting, what are

4  they going to do at that --

5          THE COURT:  Have you filed any motions recently to

6  compel discovery of documents?  I don't recall seeing any if

7  you did.

8          MR. KENNA:  Of course, we filed motions to compel.  We

9  had to file motions to compel.

10         THE COURT:  In the last six months?

11         MR. KENNA:  Not in the last six months.  I just filed

12  Kaplan III on the 9th of March of this year.

13         THE COURT:  This matter is going to get resolved.  It

14  doesn't seem to me -- if I postpone this to the point where

15  you've got another meeting that's going to come forward, then

16  we'll have Kaplan IV and then Kaplan V.

17         MR. KENNA:  We may.

18         THE COURT:  We're going to try this case.

19         MR. KENNA:  I don't have a problem with that, Judge.

20  That's why I proposed what I proposed.  I'm sorry.

21         THE COURT:  Let me ask a different question of both

22  counsel.  I guess I'll ask you first, Mr. Kenna.  Why should

23  this be a jury trial?

24         MR. KENNA:  That's a good question that I --

25         THE COURT:  Thank you.

Page 12

1          MR. KENNA:  -- that I thought might come up today.  I

2    don't think it necessarily needs to be a jury trial.

3          THE COURT:  Are you, therefore, waiving your --

4          MR. KENNA:  No, I'm not waiving.

5          THE COURT:  -- claim for a jury?

6          MR. KENNA:  I'm not waiving it because I haven't had a

7    chance to make sure that that would be okay and understood

8    fully by my client as to what the ramifications of that would

9    be.  I think --

10         THE COURT:  Under what grounds could you argue, even

11   if you decide you want to argue, that it should be a jury

12   trial?

13         MR. KENNA:  I think you're entitled to a jury trial

14   under the federal securities laws.  I don't think you're

15   prevented from having a jury trial in these types of cases or

16   that there's only equitable relief that you're seeking or

17   anything along those lines.

18         THE COURT:  What are you seeking that is not

19   equitable?

20         MR. KENNA:  Well, we're going to be seeking attorney's

21   fees.  We're going to be seeking damages in the sense of

22   attorney's fees because if we prevail in any one of these

23   litigations we would be entitled at least to apply for

24   attorney's fees and to seek damages based on that and our costs

25   and expenses in these actions.

Page 13

```
1            THE COURT:  Do you have some case law that tells me,

2   when you seek attorney's fees, that converts a case in equity

3   to a case at law?

4            MR. KENNA:  It's a claim that would be a damage claim,

5   I guess, is what I'm viewing it as.

6            THE COURT:  Well, it isn't a damage claim.  It's a

7   claim for attorney's fees, right?

8            MR. KENNA:  They're damages.

9            THE COURT:  What's the defendant's position on this?

10           MR. HANDLER:  With respect to waiving a jury trial,

11  your Honor?

12           THE COURT:  Not waiving but whether or not the

13  plaintiff is entitled to one and/or you.  You have a

14  counterclaim in this case, right?

15           MR. HANDLER:  No, we do not, your Honor.  And we are,

16  so far as I'm aware, certainly prepared to proceed without a

17  jury if that's the Court's inclination.

18           THE COURT:  Is it your position that the plaintiff is

19  not entitled to a jury trial or just that you would prefer not

20  to have a jury trial?

21           MR. HANDLER:  Your Honor, I think certainly the

22  latter; and if I were to express an opinion on the former, I

23  think it would not be fully informed, so I don't think I want

24  to do that.

25           THE COURT:  I'm not sure.  I don't know whether the
```

Page 14

1    plaintiff is entitled to a jury trial, and I guess I'll have

2    you all help me decide that by submitting, sooner rather than

3    later, memoranda in that regard unless you can both agree that

4    it will either be -- you both agree either that it ought to be

5    a jury trial or that it ought not to be.  I think I would be

6    influenced if both sides believe it ought to be a jury trial or

7    if both sides agree that it ought not to be.  But if there's a

8    conflict there, then I want some law to help me.

9         What is to prevent you, Mr. Kenna, from taking one or

10   two brief depositions between now and May 1st and being ready

11   to go four-plus weeks hence from now?

12        MR. KENNA:  Probably a lot of things.  If this were

13   the only case I had --

14        THE COURT:  Well, you've had this case on your docket

15   for ten months, have you not?  Because that's when we set the

16   trial date.  We set it in July.

17        MR. KENNA:  I understand that.

18        THE COURT:  You're ready to go on I and II on May 1st?

19        MR. KENNA:  I'm ready to go on I and II on May 1st.

20        THE COURT:  Then I think it behooves you to get

21   yourself ready for Kaplan III between now and May 1st.  And I'm

22   willing to allow you a brief amount of additional discovery

23   between now and then in order to supplement the discovery

24   you've already had.  You tell me how much you need, and I'll

25   tell you whether you can have it.

1          MR. KENNA:  Well, with all respect, your Honor, I

2     don't think that's going to be enough time.  I mean, it's three

3     weeks or whatever the period of time is.  But given other

4     things that I have --

5          THE COURT:  Then we'll go forward on I and II, and you

6     can decide to try III another year.

7          MR. KENNA:  Your Honor, one of the things that you

8     raised, as I said, that I thought was a good point was whether

9     or not we need to have a jury trial in this case.  Now, I don't

10    know if that's driving the May 1 date or it isn't driving the

11    May 1 date.

12         THE COURT:  What's driving the May 1 date is that I

13    put stock into dates that I give people ten months in advance.

14    I told you both to be ready for trial on May 1st.  I'm ready

15    for trial on May 1st.  I have a full docket.  If we postpone,

16    of course, then it knocks a hole where I didn't think I had a

17    hole, and it puts pressure on areas where I thought I had

18    flexibility.

19          So I am anxious to keep schedules that I make.  And

20    unless there is a very good reason for a postponement -- and I

21    don't see it in this case because, frankly, I don't see that

22    the issues that are involved in Kaplan III are materially

23    different than those -- than those that are present in Kaplan's

24    I and II.

25          To the extent that you need some minimal amount of

Page 16

1    additional discovery, I think you can do it in four weeks,

2    taking a couple-hour depositions of people or getting some

3    additional documents, which you would be entitled to if there

4    are such additional documents that relate solely to the third

5    meeting that is in dispute.

6         But I think that whether it's a jury trial or a

7    jury-waived trial, we're going to go forward on May 1st.  And

8    if it's a jury-waived trial, we have more flexibility because

9    we don't have to empanel a jury on Mondays, and we can go not

10   in consecutive days and so on.  If counsel want to agree right

11   away that it's a jury-waived trial, that will give us more

12   flexibility to schedule you.

13        MR. KENNA:  I'd like to consult my --

14        THE COURT:  If not, I'll give you a short period of

15   time to tell me why it ought to be a jury trial and I'll decide

16   on that.  But, in the meantime, we'll proceed as though it's

17   going to be a jury trial on May 1st.

18        MR. KENNA:  I do want to discuss that with my client.

19        THE COURT:  Yes.  You're entitled to do that.

20        MR. KENNA:  I want to make sure they understand what

21   that means.

22        THE COURT:  Sure.  How long do you need to get back to

23   me in that regard?

24        MR. KENNA:  I ought to be able to get back to you

25   tomorrow or certainly early next week.

Page 17

1          THE COURT:  That's fine.

2          MR. KENNA:  And we can discuss it as well.

3          THE COURT:  On or before, Monday, the 10th, counsel

4    will inform the Court as to its agreement, if it can reach one,

5    as to whether this will be a jury or jury-waived trial.  If

6    there is no agreement, then on that day I want briefs, not to

7    exceed five pages, from each side as to why I should or should

8    not determine that this is a jury or jury-waived trial.  I'll

9    decide that next week.

10         And in the meantime, we'll plan as though it's going

11   to be a jury trial that will commence on May 1st.  That is a

12   Monday.  We'll empanel on that day and go from day to day

13   thereafter.  But in the meantime, I will allow -- again, unless

14   I am convinced to the contrary -- the plaintiff to have limited

15   discovery that will be completed not later than two weeks from

16   today.  That would be the 20th -- let's make it the 21st, that

17   Friday of that week, the 21st of April.  And if the plaintiff

18   needs to take up to three depositions, totaling six hours of

19   deposition time, as far as the plaintiff is concerned on direct

20   examination, he may do that.  If there are documents that he

21   needs to have produced to him, he can file such a request

22   within a week, and the documents will be produced on or before

23   the 21st of April.

24         Then depending upon whether or not this is a jury

25   trial, if there are to be any in limine motions, they will be

Page 18

1    filed on or before the 21st -- that's the Friday that we've

2    previously mentioned -- and any responses thereto will be due

3    on the Wednesday following that, which I think would be the

4    26th of April.

5          On the 23rd of April, that is, that Monday, I will

6    want proposed voir dire questions for the jury panel -- 24th.

7    I misspoke.  It should be the 24th of April.  I'll have

8    proposed voir dire questions, a list of witnesses and exhibits

9    of each side, objections to which will be filed on or before

10   Wednesday, the 26th.  Requests for instructions to the jury

11   will be due on the first day of trial.  I will allow counsel to

12   supplement those requests during the course of trial.

13         How long a trial do you think -- I think last time we

14   thought it was going to be a three-day trial.  Is that right,

15   Mr. Kenna?

16         MR. KENNA:  What do you do with juries, your Honor?

17   Do you start at 9 and go --

18         THE COURT:  We start at 9 and go through till lunch

19   and then go in the afternoon till about 3 or 3:30.

20         MR. KENNA:  It will take at least three days.

21         THE COURT:  All right.  Defendants agree with that?

22         MR. HANDLER:  We said, I think, in our pretrial

23   memorandum, your Honor, three to five.

24         THE COURT:  Okay.  We'll count on the trial being

25   completed during that week of the 1st because, as far as I

1   know, the only conflict I have would be on the second day, that

2   is, Tuesday, the 2nd of May, I'll have commitments in the

3   afternoon.  So we wouldn't have an afternoon session, but we

4   would have full sessions regularly as we go.

5          Again, I'm contemplating now that it's a jury trial.

6   If it turns out to be a jury-waived trial, then we have more

7   flexibility in terms of timing and whether we can put it into

8   the following week even.  Okay.

9          Anything else that needs to come to my attention in

10  this matter?  I suppose the one thing that needs to come to my

11  attention is whether anybody has thought about resolving it

12  short of this trial.  Is there a way to do that?

13         MR. KENNA:  We have a mediation scheduled right now, a

14  full day of mediation scheduled, for the 26th of April.

15         THE COURT:  Before whom?

16         MR. NOLAN:  James McGuire.

17         MR. KENNA:  JAMS.

18         THE COURT:  Okay.  Well, I hope that you can resolve

19  it, then.  If the matter is a jury-waived matter, there will be

20  some flexibility.  That being just five days before trial, we

21  could build some flexibility into what happens if you can't

22  resolve it on the 26th.  Hopefully, you can resolve it on the

23  26th.  If you can't, right now we have a trial set for May 1st.

24  I'll look forward to hearing from counsel on the jury or

25  jury-waived question on Monday.  And then we'll proceed from

Page 20

1    there.

2          Is there anything else that needs to come to my

3    attention?

4          MR. KENNA:  Your Honor, I'm going to need your -- I

5    may need your assistance.  In the past we've had a lot of

6    difficulty scheduling depositions.  I've got a very short leash

7    of time here to do it.  I just advise the Court of that.  I

8    don't think we're going to have a problem, but I've had in some

9    cases months where I wasn't able to get somebody for a

10   deposition.  And if I need them, I'm going to have to have them

11   when I want them and do these depositions.

12         MR. NOLAN:  We heard what you said, your Honor.

13         THE COURT:  I'm sure you did, and I expect defendants

14   will cooperate as fully as any reputable, as you are, law firm

15   and that the matter will be resolved in a professional way.  I

16   don't want to have to deal with this matter of any discovery

17   problems between now and the end of the month, so I sincerely

18   hope that that won't be necessary.

19         MR. NOLAN:  I'm sure that it won't, your Honor.

20         THE COURT:  Anything else?  If not, we're adjourned.

21   (Whereupon, at 3:42 p.m. the hearing concluded.)

22

23

24

25

Page 21

```
 1              C E R T I F I C A T E

 2

 3

 4         I, Cheryl Dahlstrom, RPR, RMR, and Official Reporter

 5    of the United States District Court, do hereby certify that the

 6    foregoing transcript, from Page 1 to Page 20, constitutes, to

 7    the best of my skill and ability, a true and accurate

 8    transcription of my stenotype notes taken in the matter of

 9    Civil Action Nos. 04-10402 and 05-10320, Richard E. Kaplan vs.

10    First Hartford Corporation.

11

12

13

14

15

16

17                        Cheryl Dahlstrom, RPR, RMR

18                        Official Court Reporter

19

20

21

22

23

24

25
```

# EXHIBIT 3

**Handler, Jonathan I.**

| | |
|---|---|
| **From:** | Nolan, John B. |
| **Sent:** | Tuesday, March 28, 2006 2:55 PM |
| **To:** | Rothberg, Robert |
| **Cc:** | Rkaplan585@aol.com; Kenna, Larry; TCN@mpmlaw.com; DKaplan436@aol.com |
| **Subject:** | RE: Mediation |

Bob

Your proposal is accepted.

As far as the mediator is concerned, we know from another matter that Mr. Green is probably unavailable to meet our scheduling requirements, which is unfortunate. Mr. Maguire is acceptable. Do you want to check on available dates or do you want us to do it?

Jay

-----Original Message-----
From: Rothberg, Robert [mailto:RRothberg@choate.com]
Sent: Tuesday, March 28, 2006 10:33 AM
To: Nolan, John B.
Cc: Rkaplan585@aol.com; Kenna, Larry; TCN@mpmlaw.com; DKaplan436@aol.com
Subject: Mediation


Jay –

We have discussed your proposal to attempt mediation. Richard would be willing to attempt mediation to try to resolve the current disputes, provided, however, that (a) Neil Ellis provides written confirmation of the offer you conveyed to me; (b) we can agree upon a mediator located in Boston; and (c) this would be within a quick time frame. No mediation proceedings would in any way delay the pending litigation matters. If this is acceptable, I would suggest that we proceed as quickly as possible, since if we are unable to resolve these matters by mediation, we will need to focus our efforts on the litigation, which is on a pretty quick time schedule.

In terms of mediators, we suggest the following names:

Eric Green
http://www.resolutionsllc.com/principals.htm#Eric


Jim Maguire
http://www.jamsadr.com/neutrals/bio.asp?neutralid=1822


David Hoffman

1

http://www.themediationgroup.org/DHoffman_bio.shtml

Brad Honoroff

http://www.themediationgroup.org/bh_bio.shtml

Eric Green is the only one whom I have personally used. He is very, very good. He is also pricey ($9,000 per day in Boston, more out of town), and hard to schedule on short notice. The others are all well respected. I would not suggest hiring any of them as a valuator. However, I think what we need is mediation skills rather than valuation skills.

If you have any other names, please let me know.

Let me know your thoughts.

Bob

*************************************************************************
This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com
*************************************************************************

# EXHIBIT 4

**Handler, Jonathan I.**

| | |
|---|---|
| **From:** | Kenna, Larry [LKenna@choate.com] |
| **Sent:** | Wednesday, April 12, 2006 10:45 AM |
| **To:** | Nolan, John B.; Carr John; Rothberg, Robert; Handler, Jonathan I.; Hirsch, Jillian B. |
| **Cc:** | McGuire James |
| **Subject:** | RE: Kaplan, Richard vs. First Hartford Corp. - REF# 1400009462 |

Regrettably, Mr. Kaplan is not going to participate in a mediation on
April 26. Any further charges (if any) will be the sole responsibility
of Mr. Nolan's client. Thank you. LCK

-----Original Message-----
From: Nolan, John B. [mailto:jbnolan@dbh.com]
Sent: Wednesday, April 12, 2006 10:42 AM
To: Carr John; Kenna, Larry; Rothberg, Robert; Handler, Jonathan I.;
Hirsch, Jillian B.
Cc: McGuire James
Subject: RE: Kaplan, Richard vs. First Hartford Corp. - REF# 1400009462


We do not agree with Mr. Kenna's unilateral attempt to cancel;
representations were made to the USDC concerning this mediation. Please
keep the date on Mr. McGuire's schedule for the time being.

-----Original Message-----
From: Carr John [mailto:JCarr@JAMSADR.com]
Sent:  Wed Apr 12 10:28:51 2006
To:    lkenna@choate.com; rrothberg@choate.com; Handler, Jonathan I.;
Nolan, John B.; Hirsch, Jillian B.
Cc:    McGuire James
Subject:    Kaplan, Richard vs. First Hartford Corp. - REF#
1400009462

Dear Counsel:



I have taken the April 26, 2006 mediation session off Jim McGuire's
calendar as per the instruction of the plaintiff. Attorney Kenna
represented that he would contact opposing counsel regarding this
matter. You will not be responsible for the hearing time but will
remain responsible for JAMS non-refundable administrative case
management fee of $200 per side. Final invoices will follow shortly.

John J. Carr

ADR Specialist

JAMS, The Resolution Experts

Boston Resolution Center

617-228-9128 (direct)

617-228-0222 (fax)

jcarr@jamsadr.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this message, along with any attachments, may be confidential and legally privileged.  If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT 5

# CHOATE

CHOATE HALL & STEWART LLP

Larry C. Kenna
(617) 248-2113
lkenna@choate.com

April 12, 2006

BY HAND

Jonathan I. Handler, Esq.
Day, Berry & Howard LLP
One International Place
Boston, MA  02110

RE:    Richard E. Kaplan v. First Hartford Corporation

Dear Jonathan:

Enclosed are three (3) deposition notices.

In light of my vacation schedule, Judge Gorton's order of April 6, 2006 regarding FHC's obligation to produce documents by no later than April 21, 2006, and the trial of these cases set to begin on May 1, 2006, the dates of these depositions cannot be negotiated.

Very truly yours,

Larry C. Kenna

LCK/slw
Enclosures

cc:    Richard E. Kaplan, Esq.
       Robert Rothberg, Esq.

# EXHIBIT 6

## Handler, Jonathan I.

| | |
|---|---|
| **From:** | Kenna, Larry [LKenna@choate.com] |
| **Sent:** | Wednesday, April 12, 2006 4:17 PM |
| **To:** | Handler, Jonathan I. |
| **Subject:** | Discovery for Kaplan III |

Jonathan, I have your fax of just a few minutes ago. My recollection of Judge Gorton's order is that we were to request documents by April 13, that FHC was to produce the documents by no later than April 21, and that we were permitted to take 3 depositions. Judge Gorton did not order the depositions to be taken by April 21, since that was the deadline for your production of documents. I have noticed the depositions consistent with my recollection of the discussion on April 6, and expect you to produce your witnesses for deposition on April 25 and 26, as noticed. LCK

Larry C. Kenna

C H O A T E

Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
t 617-248-2113
f 617-248-4000
lkenna@choate.com
www.choate.com

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

# EXHIBIT 7

# Day, Berry & Howard LLP

COUNSELLORS AT LAW

Jonathan I. Handler
Direct Dial: (617) 345-4734
E-mail: jihandler@dbh.com

April 14, 2006

**VIA HAND DELIVERY**

Larry C. Kenna, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110

>          Re:     **Richard E. Kaplan v. First Hartford Corporation**
>                  **C.A. Nos. 04-10402-NMG / 05-10320-NMG / 06-10424-NMG**

Dear Larry:

I am writing to follow up on our April 12 exchange regarding the Court's instructions on the discovery Mr. Kaplan will be permitted to undertake prior to trial. To that end, I have attached a copy of the complete transcript of the April 6, 2006 final pretrial conference, which we just received from the court reporter. As you will see, the Court made clear on page 17 (lines 14-17) that Mr. Kaplan is to complete his discovery by April 21: "the plaintiff [is] to have limited discovery that will be completed not later than two weeks from today. That would be the 20th -- let's make it the 21st, that Friday of that week, the 21st of April." Accordingly, and as I noted in my April 12 letter, your deposition notices do not comply with the schedule set by the Court. If it is your intention to take one or more depositions before April 21, please let us know by the close of business today. As you know, any depositions you choose to take would also be subject to the other restrictions set by the Court (i.e., no more than three depositions for a total not to exceed six hours of deposition time (see Tr. at 17: 17-19)).

Finally, the transcript also confirms that the subject matter of Kaplan's limited additional discovery is restricted to topics concerning the November 2005 shareholder meeting at issue in Kaplan III. (See, e.g., Tr. at 16: 3-5 (Kaplan entitled only to "such additional documents that relate solely to the third meeting that is in dispute")). Many of the topics listed in your April 12 Rule 30(b)(6) notice go well beyond the issues raised in Kaplan III. If it is your intention to re-issue this notice for a date prior to April 21, we suggest that you narrow the listed topics so that

Day, Berry & Howard LLP

Larry C. Kenna, Esq.
April 14, 2006
Page 2

they comply with the Court's instruction. Likewise, a number of the topics listed in your Rule 34 request fall well outside the scope of permitted discovery. We suggest that you likewise revise this request to conform to the Court's Order.

Sincerely,

Jonathan I. Handler

JIH/et
Enclosure
cc:     First Hartford Corporation
        John B. Nolan, Esq.

# EXHIBIT 8

## Handler, Jonathan I.

| | |
|---|---|
| **From:** | Kenna, Larry [LKenna@choate.com] |
| **Sent:** | Friday, April 14, 2006 5:41 PM |
| **To:** | Handler, Jonathan I.; Nolan, John B. |
| **Cc:** | Rothberg, Robert |
| **Subject:** | Discovery in Kaplan cases before May 1 |

I have your hand-delivered letter, which was brought to my attention around 4:15 p.m. this afternoon.

We too have reviewed the transcript and advise you as follows:

First, the deposition notices fully comply with what Judge Gorton discussed as a schedule for discovery, and, absent a protective order, the plaintiff expects you to produce the witnesses as noticed for April 25 and April 26.

Second, we disagree with your assertion that "many of the topics listed in [the] April 12 Rule 30(b)(6) [deposition] notice go well beyond the issues raised in Kaplan III." We have no intention of "reissuing" the notice.

Third, we disagree with your assertion that "a number of the topics listed in your Rule 34 request fall well outside the scope of permitted discovery." We fail to see--and you have not pointed out--where we have asked for anything that is not relevant to the issues raised in Kaplan III, and, therefore, we expect your production of documents by no later than April 21.

Judge Gorton discussed the taking of depositions and getting ready for trial between April 6 and May 1 (page 14). In the end, the Judge allowed discovery limited to a document request and three depositions, and ordered that we file the document request by April 13 and that FHC produce the documents by April 21. Contrary to your assertions, the Judge did not order us to take the 3 depositions before we received the documents he ordered you to produce by April 21. Further, as the conference concluded, it became clear from the Judge's statements that if it turned out that the case was a jury-waived case (which it has turned out to be), there would be the opportunity for more flexibility in terms of timing and perhaps even in terms of the scheduling of the trial (page 19). Judge Gorton very clearly stated (page 20): " ... I expect defendants will cooperate as fully as any reputable, as you are, law firm and that the matter will be resolved in a professional way. I don't want to have to deal with this matter of any discovery problems between now and the end of the month, so I sincerely hope that that won't be necessary." Mr. Nolan assured the Court that it wouldn't (Id.).

I will be on vacation with my family next week since it is the April public school vacation week. I will, of course, be checking voicemail and email periodically, however, so please keep both me and Mr. Rothberg apprised of your decisions with respect to these matters. Thank you.

Larry C. Kenna

C H O A T E

Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110

t 617-248-2113
f 617-248-4000
lkenna@choate.com
www.choate.com

---

Confidentiality Statement:

This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP.  The substance of this
message, along with any attachments, may be confidential and legally privileged.  If you are not the designated
recipient of this message, please destroy it and notify the sender of the error by return e-mail or by calling 1-800-
520-2427.

Under regulations of the Treasury Department, we are required to include the following statement in this
message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was not
intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose of avoiding
penalties that may be imposed on the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

---

# EXHIBIT 9

# Day, Berry & Howard LLP

COUNSELLORS AT LAW

Jonathan I. Handler
Direct Dial: (617) 345-4734
E-mail: jihandler@dbh.com

April 18, 2006

## VIA FACSIMILE AND REGULAR MAIL

Larry C. Kenna, Esq.
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110

Re:    **Richard E. Kaplan v. First Hartford Corporation**
       **C.A. Nos. 04-10402-NMG / 05-10320-NMG / 06-10424-NMG**

Dear Larry:

We have your email from late Friday in response to my letter from earlier that day. Your email simply states that "the deposition notices fully comply with what Judge Gorton discussed as a schedule for discovery." They do not. The hearing transcript clearly indicates, as we have told you beginning last Wednesday, that all discovery including depositions is to be completed by April 21. It would seem apparent that you are attempting to create a "discovery dispute" where one does not and should not exist.

As we represented to the Court on April 6, we intend to fully comply with the discovery schedule. We will produce shortly documents responsive to your Rule 34 request, as limited by the Court's instruction as to the permissible scope of discovery; we remain prepared to make witnesses available after the production of documents and before the close of business on April 21.

Sincerely,

Jonathan I. Handler

JIH/lm
cc:    First Hartford Corporation
       John B. Nolan, Esq.
       Robert Rothberg, Esq. (by facsimile)

# EXHIBIT 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN,<br><br>        Plaintiff,<br><br>        v.<br><br>FIRST HARTFORD CORPORATION,<br><br>        Defendant. | Civil Action No. 04-10402-NMG<br>Civil Action No. 05-10320-NMG |

## NOTICE OF RULE 30(b)(6) DEPOSITION

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. Rule 30(b)(6), the plaintiff,

Richard E. Kaplan, by his counsel, will take the deposition of the defendant, First Hartford

Corporation, on April 25, 2006 at 10:00 a.m. at the offices of Choate, Hall & Stewart, Two

International Place, Boston, MA 02110, before a Notary Public in and for the Commonwealth of

Massachusetts or before another person authorized by law to administer oaths. Attached to this

Notice of Deposition is a list of the matters on which examination at the deposition is requested.

The oral examination will continue from day to day until completed.

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

_____
Larry C. Kenna (BBO #267760)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

Dated: April 12, 2006

4070009v1

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: 4/12/06

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST HARTFORD CORPORATION, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 04-10402-NMG
Civil Action No. 05-10320-NMG

## MATTERS FOR EXAMINATION AT FED. R. CIV. P. RULE 30(B)(6) DEPOSITION OF FIRST HARTFORD CORPORATION

1.      First Hartford Corporation's ("FHC") proxy solicitation in connection with its "Annual Meeting of Shareholders" held on November 30, 2005.

2.      The November 30, 2005 shareholders meeting, the votes taken at that meeting, and the notice to shareholders of that meeting.

3.      The Proxy Statement sent to shareholders with the notice of the November 30, 2005 meeting.

4.      The list of shareholders and addresses used in connection with the mailing of the Proxy Statement and notice of the November 30, 2005 meeting.

5.      The various business relationships that Mr. Neil Ellis has or had with FHC as described under "Certain Relationships and Related Transactions," beginning on page 10 of the Proxy Statement.

6.      All transactions between FHC (or any corporation or partnership in which FHC has an ownership interest) and Neil Ellis, Stuart Greenwald and/or David Harding and/or any entity or entities in which Ellis, Greenwald and/or Harding has a financial interest.

7.    Partnerships, joint ventures or other arrangements in which FHC or any of its direct or indirect subsidiaries is (or at any time since January 1, 1995 was) a partner, joint venturer or other participant and in which Neil Ellis has (or had) any direct or indirect interest beyond his interest as a shareholder of FHC.

8.    The documents produced by FHC in this litigation.

9.    Trading in the stock of FHC, including the price at which FHC shareholders could sell FHC shares during the period 1998 to the present.

10.    FHC's Form 10-K for Fiscal Year Ended April 30, 2005.

11.    The past and current real estate activities of Messrs. Ellis, Harding and Greenwald on behalf of entities other than FHC or any of its subsidiaries.

12.    The consideration by the FHC Board of Directors of director candidates.

13.    The "compensation committee" functions performed by the FHC Board of Directors, and the establishment of the compensation for the Officers of FHC.

14.    Monetary and other benefits provided by or through FHC or any of its direct or indirect subsidiaries to the Officers and Directors, either directly or indirectly through their various controlled entities and/or family members.

15.    Any and all borrowing of money from FHC or any of its subsidiaries by Neil Ellis, David Harding or Stuart Greenwald, or any entity controlled by them individually or collectively.

16.    FHC compliance with the Sarbanes-Oxley Act of 2002.

17.    The grants of stock options under the 2003 Stock Option Plan and the provisions included to meet the requirements for deductibility under Section 162(m) of the Internal Revenue Code.

18.     The October, 2004 refinancing of Putnam Parkade and the repayment of the

Putnam Parkade loan.

4070075v1

# EXHIBIT 11

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN,<br><br>Plaintiff,<br><br>v.<br><br>FIRST HARTFORD CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 04-10402-NMG<br>)   C.A. No. 05-10320-NMG<br>)<br>)<br>)<br>) |

## PLAINTIFF RICHARD KAPLAN'S REQUEST FOR THE PRODUCTION OF DOCUMENTS BY DEFENDANT FIRST HARTFORD CORPORATION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 34.1 of the Local Rules of the United States District Court for the District of Massachusetts, the plaintiff Richard E. Kaplan hereby requests that the defendant First Hartford Corporation produce the following documents and materials set forth below for inspection and copying in accordance with the Court's Order of April 6, 2006, at the offices of Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts.

## DOCUMENTS REQUESTED

1.      Minutes, recordings, or other reports or descriptions of each regular or special meeting of the Board of Directors of FHC between 1984 and the present, not previously produced.

2.      Minutes, records, or other reports or descriptions of every meeting between May 1, 2000 and the present of the compensation committee, if any, created by the Board of Directors of FHC.

3.    All documents reviewed by the Board of Directors of FHC from May 1, 2000 through October 26, 2005, that relate to the Board's performance of the functions of a compensation committee.

4.    Documents describing or memorializing each transaction between Richmond Realty, LLC or any entity controlled by David Harding, on the one hand, and FHC or any subsidiary of FHC (consolidated or unconsolidated), on the other, since May 1, 2000, including without limitation the written management contracts described by David Harding on page 64 of his deposition.

5.    All documents that refer or relate to the statement on page 14 of the Proxy Statement as follows: "Provisions have been included to meet the requirements for deductibility of executive compensation for the purposes of Section 162(m) of the Internal Revenue Code with respect to options and other awards by qualifying grants and payments under the 2003 Plan as performance-based compensation."

6.    All documents referring or relating to payments by FHC or any subsidiary of FHC (consolidated or unconsolidated), or any entity controlled by FHC, to Neil Ellis's daughters from May 1, 2000 to the present.

7.    All documents referring or relating to the October 2004 refinancing of Putnam Parkade and repayment of the Putnam Parkade loan to Journal Publishing.

8.    All documents referring or relating to the grants of the nonqualified options and put options that are referenced in the Proxy Statement mailed to shareholders with the Notice of the Annual Meeting for November 30, 2005.

9.    All documents referring or relating to money owed to FHC or any subsidiary of FHC (consolidated or unconsolidated) by Richmond Realty LLC or any other entity controlled by Harding, Ellis or Greenwald (and not controlled by FHC).

10.    All documents referring or relating to the indebtedness of FHC or any subsidiary of FHC (consolidated or unconsolidated) to Ellis and/or entities owned or controlled by Mr. Ellis and his wife as of (i) April 30, 2002; (ii) April 30, 2003; (iii) April 30, 2004; and (iv) April 30, 2005.

11.    All documents referring or relating to the indebtedness of Ellis and/or entities owned or controlled by Ellis and his wife to FHC or any subsidiary of FHC (consolidated or unconsolidated) as of (i) April 30, 2002; (ii) April 30, 2003; (iii) April 30, 2004; and (iv) April 30, 2005.

12.    All documents referring or relating to the write-off, write-down or similar reduction (i.e., other than by reason of cash payment) by FHC or any subsidiary of FHC (consolidated or unconsolidated) at any time since May 1, 1997, of any indebtedness of Ellis, Harding or Greenwald, or any of their spouses, or any entities owned or controlled by them or by any of their spouses (other than FHC or its subsidiaries).

                                        RICHARD E. KAPLAN,
                                        Plaintiff,

                                        By his attorneys,

                                        _Larry C. Kenna_ (BBO No. 267760)
                                        CHOATE, HALL & STEWART LLP
                                        Two International Place
                                        Boston, Massachusetts 02110
                                        (617) 248-5000

Dated:  April 13, 2006

4070630_1.DOC                    3

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: 4/13/06

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A.   No. 04-10402-NMG |
| ) | No. 05-10320-NMG |
| FIRST HARTFORD CORPORATION, ) | No. 06-10424-NMG |
| ) | |
| Defendant. ) | |
| ) | |

## <u>DECLARATION OF JOHN B. NOLAN</u>

I, John B. Nolan, hereby depose and state as follows:

1.      I am a partner in the law firm of Day, Berry & Howard LLP and am counsel for the defendant, First Hartford Corporation ("FHC"), in this consolidated matter. As counsel for FHC, I have been directly involved in the discussions among counsel with regard to the substantive and procedural issues in this case. As a result, I have firsthand knowledge of the events described herein.

2.      As a result of discussions and emails among counsel, the parties agreed on or about March 28, 2006, to hold a mediation in Boston under the auspices of JAMS. On or about April 3, 2006, the parties agreed to hold that mediation on April 26, 2006.

3.      On April 6, 2006, I attended the final pretrial conference before this Court. The Court, among other things, ordered the parties to report back by April 10 regarding whether the case ought to be tried to a jury or not. Also, at the end of the hearing, Larry Kenna, counsel for Kaplan, represented to the Court that the parties had agreed to a mediation on April 23, 2006.

4.      The day after the hearing, April 7, Kaplan's other counsel in this matter, Robert Rothberg, called me by telephone to discuss the procedural posture of the case. During that conversation, Mr. Rothberg asked me if FHC would agree to a several month postponement of the May 1 trial date if Kaplan were to agree to withdraw his jury claim. I responded that FHC would not so agree. Mr. Rothberg then stated that unless FHC agreed to such a postponement, Kaplan would refuse to participate in the mediation the parties had previously agreed to hold on April 26. Once again, I responded that FHC would not agree to a postponement.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 17 DAY OF APRIL, 2006.

_____
John B. Nolan

-2-